## BURHOP vs. THE CITY OF MILWAUKEE and another, impleaded with the Milwaukee & Superior Railroad Company.

The allegations of the complaint in this action as to fraudulent representations of a railroad company and its agents, by which the plaintiff was induced to execute his note and mortgage in payment of a stock subscription to said company, *held* to show a good ground, as against the company, for equitable interference to remove the cloud created by such mortgage upon plaintiff's title to real estate.

But said note and mortgage having been transferred to the City of Milwaukee as collateral security to indemnify it against the payment of bonds issued by it in aid of the road, the court will not determine in this action whether such transfer was without consideration by reason of the invalidity of the bonds, as alleged in the complaint, and decree that the city deliver up the mortgage and note to be cancelled, unless the holders of said bonds are made parties to the action.

Whether a bill would lie, in such a case, to compel the city and the holders of its bonds to interplead as to the validity of the bonds, is doubtful.

A demurrer to a complaint on the ground that it does not state facts sufficient to constitute a cause of action, does not raise the question of a defect of parties defendant.

But the court below having sustained such a demurrer in the present case *pro forma*, with a view to a more speedy decision by this court of the questions involved, and the question of a defect of parties having been discussed by counsel on both sides as though it were raised by the demurrer, the order sustaining the demurrer is reversed without prejudice to the right of the respondent to object to the want of proper parties.

APPEAL from the Circuit Court for *Milwaukee* County.

This was an action against the *City of Milwaukee*, the treasurer of said city, and the *Milwaukee & Superior Railroad Company*, to procure a certain note and mortgage in the hands of said treasurer, executed by the plaintiff to said railroad company in payment for a subscription to its stock, to be cancelled, on the ground that their execution was procured by fraudulent representations on the part of said company by its agent. The nature of such alleged representations will appear from the first paragraph of the opinion of the court. The complaint also contains averments as to the transfer of said note and mortgage to the city, and the purposes for which it was so transferred and held, the substance of which will appear from the second paragraph of the opinion.

A demurrer to the complaint as not stating a cause of action, was sustained ; and the plaintiff appealed.

*Joshua Stark*, for appellant, argued at length that the bonds of the *City of Milwaukee* (as indemnity against which it held the note and mortgage in question) were invalid, and therefore the city had paid no consideration for the plaintiff's note and mortgage, and could make no defense to the action which might not be made by the railroad company. He also contended that the omission to make the holders of the bonds parties to the action created no objection to the plaintiff's right to the relief sought, since they had no interest in the action or the relief, and the question as to the validity of the bonds was merely incidental in this suit.

*Jas. G. Jenkins*, City Attorney, *contra*.

*By the Court*, COLE, J.   The matters stated in the complaint in this case would undoubtedly constitute a good ground for the equitable interference of the court to remove a cloud upon the title to real estate, as between the appellant, the railroad company, and perhaps the city of Milwaukee, if the proper parties were before the court.   The appellant alleges that he was induced to execute the note and mortgage which he seeks to have cancelled and annulled, and to deliver them to the railroad company in payment of its stock, solely by the false and fraudulent statements and representations of the agent of the company.   These alleged statements related to matters material to the transaction, and would doubtless have a strong influence in determining a person to subscribe for stock.   They were, in effect, that the requisite amount of stock had been duly subscribed, and the required per centage thereon actually paid in, to effect the organization of the company in accordance with the terms of its charter; that good and *bona fide* cash subscriptions to the capital stock of the company, to the amount of fifty thousand dollars, had been made in the city of Milwaukee, and the usual cash payments made thereon after the organization of the company, in addition to the subscriptions made before for the purpose of effecting such organization; that the company was solvent, and had more than fifty thousand dollars in money raised from stock subscriptions made in the city of Milwaukee; that its pecuniary condition was good, and that it had means to construct and complete the railroad for the distance of fifteen miles; whereas, in fact, the company was really insolvent, its stock valueless, its subscriptions mostly fictitious, and it had not five thousand dollars in money raised from stock subscriptions in the city of Milwaukee.   Statements of this character relating to the pecuniary condition of the company, and about matters within the exclusive knowledge of the agents and officers of the corporation, would have a powerful influence in inducing persons to subscribe for stock.   If untrue, the contract between the subscri-

ber and railroad company ought to be set aside and declared void for fraud, and the cloud upon the title created by the mortgage removed. *Waldo v. R. R. Co.*, 14 Wis., 575.

The case, however, presented by the complaint in this action is somewhat complicated, and it is difficult to see how the aid of a court of equity can be successfully invoked, without bringing in other parties whose rights are directly involved in the determination of the question upon which the relief in this cause can be granted. It appears that the appellant's note and mortgage have been transferred and deposited by the railroad company to and with the treasurer of the city of Milwaukee, and are now held by said treasurer for the use and benefit of the city, which claims to hold them in pledge as collateral security to indemnify it against the payment of certain bonds which it issued in aid of the road. It is alleged that this transfer was wholly without consideration, because the city bonds were void for certain reasons set forth in the complaint. The city bonds being void, the city having paid no consideration for the appellant's note and mortgage, it is argued that the city is not a holder of these securities for value, and can, therefore, make no defense to the action, unless the railroad company itself could. Assuming that this position is sound, yet upon what ground can the interposition of a court of equity be invoked to compel the city to deliver up securities which it holds as a pledge to indemnify it against a liability which it has incurred by issuing its bonds?

It is said the city has incurred no liability because its bonds are invalid. But suppose we hold that the city bonds are void for any reason, is it not perfectly obvious that our judgment will not conclude the city bond holders? They may hereafter bring suit upon their bonds and establish their validity. It would therefore seem essential that the bond holders, who are directly interested in the question upon which the appellant's right to relief against the city is founded, should be before the court, so as to be concluded by the decision in this

cause. This is necessary to protect the city against future loss. Its position bears some analogy to that of a holder of a stake which is equally contested by other parties, and to which the stake holder stands indifferent. In such a case the parties claiming the property are compelled to interplead. True, the bond holders have no interest in the appellant's note and mortgage, nor can the city be said to stand indifferent to those securities in its possession. It holds them to indemnify it against a liability incurred. If the appellant establishes the fact upon which his right to relief against the city is founded, that is, shows that the city bonds are void, and does this in a suit which concludes the bond holders, then the city has no further interest in retaining the note and mortgage. But until this fact is established in a suit which concludes the bond holders and relieves the city from its liability, it would seem unjust and inequitable to compel it to deliver up those securities to be cancelled. And while it may be very doubtful whether a bill of interpleader would lie in the case (see *Farr v. Ward*, 2 Meeson & Wel., 843; *James v. Pritchard*, 7 id., 215; *Slaney v. Sidney*, 14 id., 800; *Crawshay v. Thornton*, 2 Myl. & Craig, 1; 2 Story's Eq. Jur., chap. 20), yet the principles of equity would seem to require that the court should refuse to determine the question of the validity of the city bonds, and grant the relief demanded, with the parties now before it. When the bond holders of the city are brought in, a complete determination of the matters in controversy can be had. If it then appears that the city bonds are void for any reason, it is obvious the city will have no further right to retain the note and mortgage as a holder for value, nor will it be in danger of incurring any loss in consequence of delivering up these securities, which it holds as a pledge to indemnify it against a liability on its bonds. When a complete determination of the controversy cannot be had without the presence of other parties, our statute expressly requires that the court shall order them to be brought in (sec. 22, chap. 122); and this is a

very familiar rule in equity. As, therefore, the essential fact upon which the appellant's right to relief against the city depends, is the invalidity of the city bonds, and as it is manifest that the bond holders of the city are directly and vitally interested in the decision of that question, they should, for the safety and protection of the city, be made parties to the suit, so as to be bound by the judgment.

In this case the complaint was demurred to, on the ground that it did not set forth or state facts sufficient to constitute a cause of action. The circuit court sustained the demurrer *pro forma*, without any examination or argument, in order that the cause might come more speedily to this court for a' decision of the questions involved, which was the thing desired by both parties. We make this remark in view of what has already been said upon a question not really raised by the demurrer. We think there is a defect of parties defendant. It will be noticed, however, that the complaint is demurred to, not for a defect of parties but upon another ground entirely, namely, that it does not state facts sufficient to constitute a cause of action. Our statute requires that the demurrant should distinctly specify the grounds of objection to the complaint, in order to apprise the opposite party of the question intended to be raised by the issue of law. Sec. 6, chap. 125. He may demur for any one or all of the six grounds enumerated in section 5. But if a party demurs for some specific objection, which he assigns, he must be confined to that objection; otherwise there is no reason in the provision which requires him to distinctly specify his grounds of demurrer. So here, after demurring to the complaint for the reason that it did not state facts sufficient to constitute a cause of action, the party must be confined to that objection, and must be deemed to have waived, for instance, the objection that there is a defect of parties. See *Wilson v. The Mayor &c. of N. Y.*, 4 E. D. Smith, 675–685. As a strict rule of practice, therefore, the question which we have been considering, and which was so fully dis-

cussed on the argument, was not really raised by this demurrer. We have examined and decided it, however, because it was assumed that the question as to a defect of parties was properly raised on the record. And since the court below sustained the demurrer *pro forma*, we shall reverse the order sustaining it without prejudice to the respondent's right to object, when the case goes back, for want of proper parties, if they think proper to do so.

The order of the circuit court sustaining the demurrer is reversed, and the cause remanded for further proceedings.