BURHOP vs. ROOSEVELT and others, impleaded with the Milwaukee & Superior Railroad, the City of Milwaukee and others.

*Equity—Protection of innocent holder of securities voidable for fraud as between the original parties—Pleading and practice.*

1. A note and mortgage to a railroad company, procured by fraudulent representations, having been transferred to a city to secure it against liability on its bonds issued in aid of the road, and it being claimed that the bonds are invalid for want of authority in the city to issue them, that question will not be determined, and the city required to deliver up the note and mortgage to the maker

to be cancelled, unless the holders of the bonds are not only made parties to the action for that purpose, but so subjected to the jurisdiction of the court that it may compel a surrender of the bonds.

2. The complaint, however, not showing that the bondholders made. defendants are non-residents of the state, this court, on appeal from an order sustaining a demurrer to it, cannot look into the order of publication, nor consider the statements of counsel as to the residence of such defendants.

APPEAL from the Circuit Court for *Milwaukee* County.

The decision of a former appeal in this cause is reported in 18 Wis., pp. 431–37. The cause having been remanded, the plaintiff amended his complaint so as to make defendants all the persons who owned the bonds of the *City of Milwaukee*, issued in aid of the *Milwaukee & Superior Railroad Company*. Three of these persons, *Cornelius V. S.*, *James A.* and *Theodore Roosevelt*, constituting the firm of Roosevelt & Sons, demurred to the complaint for defect of parties defendant, misjoinder of causes of action, and insufficiency of facts stated to constitute a cause of action. From an order sustaining the demurrer, the plaintiff appealed.

The bonds of the *City of Milwaukee*, on the validity of which this court still declines to pronounce in this action, are alleged in the complaint to have been issued in February, 1857, to the amount of $100,000, payable to the *Milwaukee & Superior Railroad Company* or bearer. The grounds upon which they are alleged to be invalid are, that the acts of the legislature, by virtue of which they purported to be issued (viz: " An act authorizing the city of Milwaukee to loan its credit in aid of certain railroads," approved April 2d, 1853, and the several acts amendatory thereto), did not authorize their issue to said company; that the several railroad companies particularly mentioned in said acts were all duly incorporated and organized at the times of the passage of said acts respectively, and said city, pursuant to said acts, prior to January 1st, 1856, by ordinance duly approved by the legal voters thereof, had issued, or undertaken to issue, to each of the companies so mentioned the highest amount of its corporate bonds which, by said acts,

it was authorized to issue to said several companies; that the Green Bay, Milwaukee & Chicago Railroad Company, which was, prior to January 1st, 1853, duly incorporated and organized for the purpose of constructing a railroad from Milwaukee to the southern line of this state between Fox river and Lake Michigan, and also from Milwaukee to Green Bay, on the lines described in said act of April 2, 1853, had actually received, in 1854, an issue of bonds of said city to the amount of $200,000, for the purposes and under the provisions of said act; that moreover said *Milwaukee & Superior Railroad Company* was not in being, and the act creating it was not in force, at the time when the city ordinance pursuant to which said bonds purported to be issued, was passed by the council, nor at the time when the election was held in said city for the purpose of approving or disapproving said ordinance, as mentioned in said bonds; and that the city has never paid any principal or interest upon said bonds, nor done any act to confirm the same or render itself liable thereon.

*Joshua Stark*, for appellant:

It is said that the city may be sued upon its bonds in another tribunal, and judgment may there pass against it, and so it may be compelled to pay its bonds after it has been stripped of its indemnity. This is an extreme application of supposed equitable considerations in favor of the city. But is its equity superior to that of the appellant? He did not give the indemnity. He had no voluntary agency in the transactions which brought the city into this position. The company gave the indemnity, and used for that purpose the appellant's mortgage obtained by fraud. If, now, either the appellant or the city must lose the amount of the mortgage, whose is the better equity? But ought the court to assume that the city may be subjected to the payment of its bonds? The matters affecting their validity are all before you. They are matters of record, and of such a nature that it may be said to be impossible that any facts should be presented before any other tribunal, which

can obviate, or diminish the force of, the objections now urged to the validity of these city bonds. If then this court is clearly satisfied that the city bonds are void, for want of legal authority to issue the same, is it not bound to assume that they will always be so held by all tribunals? The facts being always the same, how can this court assume that the law may be variously held by different tribunals, and act upon that assumption by refusing us relief? Have you a right to render the fraud of the company upon us effectual, on account of any such apprehension of possible loss to the city? We admit that such loss is possible. With our judicial system, federal and state, having concurrent jurisdiction over many questions, it would be strange if there were not sometimes diversities of opinion and decision upon the same question. But each tribunal must determine the questions that come before it according to its own understanding of the law, whenever it has jurisdiction of the subject and parties. It cannot evade this duty. If losses sometimes result, it is because even judges are fallible; and they cannot, in many cases, be avoided. But is this a valid reason for inflicting a great wrong upon the appellant? If the court shall refuse him relief now, we may ask when and under what circumstances he may present himself with a clearer case for equitable aid? Will it be after a judgment at law in this court, holding the city bonds void, in an action between the city and one of its bondholders? In such an action you could not decline to pass upon the validity of the city bonds upon the same facts now presented. But having adjudicated that question in an action at law, would you still refuse the appellant relief, because the question may possibly at some future time be otherwise determined in the federal courts, in a suit by some bondholder against the city? If so, the possibility of a different decision by your own successors in office would seem to be an obstacle equally fatal to the success of our action. Must we then wait until there is no longer a possibility of further litigation between the city and

its bondholders, and the city is fully exonerated by the judgment of some competent court from liability upon each and every one of its bonds? This may postpone us for twenty years, or at least until our mortgage is cut off by the statute of limitations. And meanwhile we must be silent about the fraud committed against us, and neither invoke the active aid of the court, nor even defend ourselves when assailed by foreclosure, because this court is averse to granting us justice while the city may possibly suffer prejudice thereby. The reasons for denying him relief in this action are equally potent to bar him of his defense of fraud to an action to foreclose his mortgage. If you determine to deny the appellant relief unless you can by the same judgment cancel the city bonds, and bar the holders of all right of action against the city, you deprive him of all hope of relief. So far as this question between the city and the appellant is concerned, it can make no difference whether the city is compelled to pay its bonds by the judgment of a court, or pays them voluntarily. If he can question the validity of the bonds in the former case, his right to do so must be allowed in the latter as well; for he cannot be affected by any judgment or judicial proceedings to which he is neither party nor privy.

Will you dismiss this action when you know that, if not already past, the period within which an action for relief may be brought by the appellant will soon drift by, and he will be utterly remediless, *whether the bonds of the city shall be ultimately held void or not?* If it comes to a *balancing of equities*, should not a *certain irreparable* injury to the appellant outweigh a *possible* loss to the city?

*J. W. Cary*, for respondent.

Dixon, C. J. The decision heretofore made upon the demurrer of the city (18 Wis., 431), that the action could not be maintained without the holders of the bonds being made parties, necessarily presupposed that the holders would be made

Burhop vs. Roosevelt et al.

parties in such a manner that the court could, in case the bonds were adjudged to be invalid, compel the holders to surrender them to be cancelled. The bonds have many years to run, and are negotiable, passing from hand to hand like commercial paper, and unless they are surrendered, or the court can compel them to be, it is obvious that no such protection can be afforded to the city as against future holders. Such holders being purchasers in good faith without notice of this suit, would not be bound by the judgment; and the city might still be held liable to pay. It is manifest, therefore, that to make these proceedings effectual to protect the city, the holders of the bonds must not only be parties in a general sense, but the court must have jurisdiction of their persons, so that its mandates can be enforced by process of attachment and imprisonment in case of any contempt or disobedience on the part of such holders. In other words, the court must have full power to compel a surrender of the bonds, which it would not have if the holders are not residents of the state. These remarks are based upon the statements of counsel, that the holders of the bonds, or some of them, reside abroad. In fact it appears by the record returned by the clerk, that some or all of them were brought in by publication. But as this is a demurrer to the complaint, in which the places of residence of the holders of the bonds are not stated, we suppose it cannot be assumed that they are not residents of this state. Neither can we look into the order of publication, nor consider the statements of counsel for the purpose of ascertaining the facts. It may perhaps be a query, whether a complete right of action is stated in the complaint, without an averment that the holders of the bonds do reside within this state. We reverse the order sustaining the demurrer, and remand the cause for further proceedings according to law.

*By the Court.*—Order reversed.