[See note to Case No. 6,532.]

## Case No. 6,534.

HITCHCOCK et al. v. GALVESTON.

[3 Woods, 287.] [1]

Circuit Court, E. D. Texas. May Term, 1878.

PLEADING—FRAUD IN MAKING CONTRACT—CONDITION PRECEDENT — UNCERTAINTY OF CONTRACT —SUBSTITUTION OF NEW CONTRACT —VARIATION BETWEEN ORDINANCE AND CONTRACT.

1. Under article 1442, Pasch. Dig. Laws Texas, where a contract alleged to have been

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]
12FED.CAS.—15

made by a city was executed by its mayor, the plea of non est. factum need not be sworn to by the mayor.

2. In such a case, where the act of the mayor is questioned, the plea is properly sworn to by members of the common council, and an affidavit made by them to the best of their knowledge and belief, is sufficient.

3. Under the jurisprudence of Texas, the party making a charge of fraud must point out, at least in general terms, the acts upon which he relies to sustain it.

4. An agent or officer may have authority to make a contract, and yet be guilty of fraudulent collusion with the other party in making it. The terms of the contract, and all the circumstances of its negotiation and execution, and the conduct of the parties before and afterwards, may be examined for the purpose of proving such fraud.

5. The fact that the profits to be derived from a contract are very large, is no reason why they should not be recovered. Where the profits are unreasonable and unconscionable, that fact may be an indication of fraud in procuring the contract. But where the contract is established against all charges of fraud or other assaults on its validity, it is entitled to all the legal consequences and incidents of a valid contract.

6. A city ordinance authorized the mayor and chairman of the street committee to contract for grading and paving certain specified sidewalks, but directed them first to advertise for bids for the work. Held, that the advertisement calling for bids was a condition precedent to the making of a valid contract.

7. Under said ordinance an advertisement for bids, signed by the mayor, but not by the chairman of the street committee, is sufficient.

8. Bona fide contractors ought not to be prejudiced by too nice and critical a construction of an advertisement for bids, or because it is vague and general.

9. The advertisement for bids for grading and paving certain sidewalks declared, "All the above work is to be done and executed in accordance with the specifications of the city engineer, now on file in this (the mayor's) office." Held, that the fact that there were no such specifications on file, then or at any other time, did not affect the authority of the mayor and chairman of the street committee to make a contract for the work.

10. Where the contract itself required the work to be done according to the specifications on file. and none were on file, but the contract itself specified the materials. and there was a common and well-known process of doing the work: Held, that the contract was not void for uncertainty, and the contractors might proceed to do the work in the usual and ordinary way. or refuse to perform the work for want of specifications, and seek damages for the non-fulfillment of the contract in that respect.

11. A contract for filling and grading sidewalks is not void because at the date of the contract no grade for the sidewalks was established.

12. A city ordinance authorized the mayor and chairman of the street committee to proceed to have sidewalks constructed in front of the lots of those owners who, for sixty days after notice to do so, failed themselves to construct such sidewalks. Held, that without such notice and failure, the officers had no authority to contract for the construction of said sidewalks.

13. Where a contract entered into between the officers of a city and contractors, imposed a more rigid condition on the contractors than was required by the ordinance by which the contract was authorized to be made: Held, that this did

not avoid the contract; if the contractor consented, the city could not object.

14. The fact that the contract did not conform to the advertisement for bids, did not make it void, provided the contract was within the scope of the ordinance which authorized it.

15. The fact that a contract has been vacated and a new one adopted in its place, is a good defense to an action on the original contract.

This cause was heard upon the demurrers of the plaintiffs [D. G. Hitchcock & Co.] to several of the answers of the defendant. The substance of the answers demurred to will appear in the opinion of the court.

F. Charles Hume, for plaintiffs.

Wm. P. Ballinger and George Flournoy, for defendant.

BRADLEY, Circuit Justice. The first point raised on this demurrer is to the 6th plea of the original answer, which denies that the contract was the contract or deed of the defendant, the inducement or reason of the plea being that the mayor of the city, and the chairman of the committee on streets and alleys, who executed it, had no lawful authority to make and execute the same. It is contended that this plea should be supported by an affidavit, under article 1442 of Paschal's Digest. But it is evident that this article cannot be literally enforced where the defendant is a corporation; for a corporation cannot make an affidavit. And as the mayor is one of the officers whose act is questioned, I think the affidavit was properly made by a member of the common council. It is still objected that they only swear to their best knowledge and belief. But from the nature of the case, this was all they could properly swear to. Besides, it was held, in Compton v. Western Stage Co., 25 Tex. Supp. 67, that where the denial is to the authority of an agent to execute the deed, no affidavit is required. This demurrer, therefore, is overruled.

The next question raised by the demurrer is to the plea that the contract was obtained by fraud on the part of the plaintiffs, being the seventh plea in the original answer. It is objected that this plea is too general, and does not apprise the plaintiffs of the matters intended to be relied on, as proof of fraud, or of the acts in which the fraud consisted. At the common law the plea of fraud is allowed to be general, as shown by Chitty on Pleading. But in equity, as a general thing, the specific acts of fraud must be shown; for fraud is there commonly set up as a ground of specific relief, such as the setting aside of a contract, etc., and hence the court requires that the complainant shall apprise the defendant of the specific grounds on which the charge of fraud is made, in order that he may have the benefit of his answer thereto.

I infer from the cases cited from the Texas Reports, that, in this state, the equitable rule is followed. Of course it cannot be expected that the party charging fraud can give all its details, for it is of the very nature of fraud to cover itself up with as much concealment as possible, and the details by which it is effected are more in the knowledge of the party who has committed a fraud than in that of the party who has been victimized by it. Nevertheless, the party making the charge must point out, at least in general terms, the acts on which he relies to sustain it. The defendants, in the present case, insist that they have done this by the several amendments to their answer. An examination of these amendments shows that they have, in fact, specified a number of facts which they insist are either direct acts of fraud, or are convincing proof that there was fraudulent collusion between the plaintiffs and the officers of the city who made the contract. Without attempting to specify all the acts relied on, the following may be cited by way of example: The defendants charge that the ordinances passed by the common council on the subject of paving the sidewalks, were not, in good faith, followed and observed either in advertising for proposals, preparing specifications, fixing the grade, notifying property owners to pave in front of their lots, or in framing the contract entered into with the plaintiffs; but that in each of these particulars there was a fraudulent departure from the ordinances—a departure calculated to defraud the city and the property holders, and to throw into the hands of the plaintiffs a most unconscionable advantage, with an option to do all the work, or only a part of it, as might be most profitable to themselves. The specific way in which these departures were made is pointed out; and, as a further proof of fraud, it is stated that the profits to be realized by the plaintiffs from the contract, and claimed by them, are grossly exorbitant and unreasonable, exceeding a hundred per cent. on the outlay which the work would require. And it is distinctly charged that the plaintiffs suborned persons to make bogus bids for the work, at high rates, so as to make it appear that the plaintiffs' bids were reasonable and moderate, and that by the suppression, or failure to furnish information as to the specification of the work, and the grades to be followed, other persons who might and would have bid therefor, were deterred from so doing. It seems to me that these specifications of proofs and acts are sufficient to sustain the plea of fraud as a pleading. Whether the proof, on the trial, will sustain the allegations, or will be sufficient to warrant a finding of fraud by the jury, is another question, with which I have nothing to do. I think, with these amended averments, the plea of fraud has ceased to be demurrable, and that the defendants may, if they can, set up a defense under it. This demurrer, therefore, must also be overruled.

The considerations already referred to will dispose of the objections made to several other portions of the defendants' answer, which,

if not sustainable as distinct grounds of defense, may, nevertheless be regarded as admissible when considered as specifications of proofs and acts of fraud under that general plea. To this class may be referred the allegations, that no specifications of the work to be done were ever made or filed in the mayor's office, and that no grade was established by the city engineer; and that no specifications, estimates or computation of the amount of work and material necessary to the construction of the sidewalks was made by him, or obtained by the mayor or chairman; that the contract was not in conformity to the advertisement for proposals; that the work contemplated by the advertisements and the contract would have exceeded all the provisions made by bonds or otherwise for the payment thereof; that the advertisements were so framed as to require bids for the entire work in bulk; and, in general, all the allegations of the answer which are made for the purpose of showing that the contract was fraudulently procured by the plaintiffs, or fraudulently and collusively entered into by the officers of the city who negotiated and executed the same. At the same time, all allegations made for the purpose of showing that the mayor and the chairman of the committee on streets and alleys, had no authority to enter into the contract by virtue of the charter and ordinances set out in the pleadings, and the advertisements for proposals must be regarded as overruled by the decision of the supreme court. The court had all these ordinances and advertisements before it, and duly considered the same, and came to the conclusion that such authority existed. The demurrer must be sustained, therefore, as to all those allegations of the answer which attempt to show a want of such authority. But although an agent or officer may have unquestionable authority to make a contract, he may be guilty of fraudulent collusion with the other contracting party in making it; and it may be void, and not binding on its principal, by reason of such fraud. And the terms of the contract, and all the circumstances attending its negotiation and execution, including the conduct of the parties before and afterwards, may be examined for the purpose of evincing and proving such fraud. It is, therefore, true that many of the allegations of the answer may be admissible as showing proofs of fraud on the part of the plaintiffs, and of the officers by whom it was negotiated, which would not be admissible as grounds for showing a want of authority on the part of the said officers to make it. This distinction must be constantly borne in mind in considering the several portions of the answer which are demurred to. So far as they are put forward as instances or evidences of fraudulent practice, they are admissible, for even if they should severally be insufficient by themselves to demonstrate fraud, yet, as circumstances, they may contribute to that accumulation of proof which is necessary to demonstrate it. If clearly irrelevant to the issue, of course they would be demurrable. But it is often very difficult, in a case of this kind, to say that this or that fact alleged can have no bearing on the question.

Guided by this general principle, it will not be difficult to designate those portions of the answer which are bad on demurrer and those which are sustainable. The first plea contained in the amended answer, filed February 20th, 1875, and extending to folio 164, inclusive, on page 47 of the printed record used in the supreme court, is overruled. The second and third pleas contained in the same amended answer, and occupying the residue thereof (except so far as the said third plea questions the authority to make said contract), are sustained, being in fact amplifications of the plea of fraud. In like manner, all the allegations contained in the amended answer, filed on the 29th day of May, 1878, for the purpose of showing that the mayor and chairman of the committee on streets had no authority to make the contract in question, are overruled; but all of said allegations, made for the purpose of showing that the said contract was fraudulently made are sustained. The allegation with regard to the notorious previous character of the plaintiffs is overruled, as evidence of that fact would not be competent, having no relation to this case. The allegation with regard to their insolvency is sustained, because that is a circumstance which would be competent on the question of fraud, if no security was required from them for the fulfillment of their contract. The plea that there was a novation or change of the contract agreed upon by the parties as reported to, and adopted by the common council on the 28th of March, 1874, is allowed to stand. If such a new contract was in fact made, as distinctly alleged by the defendant, and was afterwards repudiated by the plaintiffs, as also alleged, it would undoubtedly be a valid defense to this suit.

As to the question of the right of the plaintiffs to recover profits, which they lost by reason of the defendants' refusal to go on with the contract—which question was originally raised by the defendants' demurrer to the original petition, and which is now again presented by the present demurrer—my opinion is, that if the contract is good, valid and binding on the defendant, there is no reason why the ordinary consequences of such a contract should not follow. It is a settled rule of law that if a party to a contract is prevented from performing it by the other party thereto, he is entitled to recover as well such damages as he actually sustains as the profits which he would have realized. The loss of such profits is a part of the damage which he sustains. The expected benefits of the contract are his property. If the answer contains a plea denying the right to recover such profits, it is equivalent to a demurrer and must be overruled. When expected prof-

its are unreasonable and unconscionable, that fact may be one of the evidences of fraud in procuring the contract. But when the contract is established against all charges of fraud and other attacks upon its validity, it is entitled to all the legal consequences and incidents of a valid contract.

The only other question that occurs to me, as presented by the demurrer, is that relating to the measure of damages, as depending upon the agreement to pay for the paving in city bonds. I deem it unnecessary to decide whether such bonds would or would not have been valid. This is not a suit on the bonds, but on the contract. The parties negotiated the contract on the supposition that the bonds would be valid; that the city had power to issue such bonds. It is clear, therefore, under the decision of the supreme court, that the measure of damages must be the value of the bonds which the plaintiffs were entitled to receive on the supposition that the bonds would have been valid. This is the measure of value which the parties had in view, and on which their minds met. I think that these conclusions cover all the material points raised by the demurrer, and an order will be made in accordance therewith.

At a subsequent day of the term Mr. Circuit Justice BRADLEY delivered the following opinion, which is more full upon the questions presented by the demurrers:

The parties not being able to agree upon the form of judgment to be entered upon the opinion recently given by me in this case, and having desired me to review certain portions of that opinion, I have accordingly reexamined the case as submitted to me, and am convinced that I did not take an entirely correct view of the scope and effect of the judgment rendered by the supreme court. As the defendants, in their answer, filed December 16th, 1874, had spread upon the record the ordinances, Nos. 21, 26 and 37, under which the mayor and chairman of the street committee derived their power to make the contract in question; and as the plaintiffs, in their amended petition, had also spread the same ordinances on the record, it occurred to me that the question, whether these officers had pursued their authority under said ordinances in making the contract must have been impliedly. if not expressly, decided by the supreme court. But a more careful examination convinces me that I was mistaken. The plaintiffs had, in their original and amended petitions, relied on a subsequent ratification of the contract by the common council; and the supreme court, after deciding that the city had power to construct the pavements in question, and, if necessary, to incur a debt therefor; and that the common council could and did authorize the mayor and chairman of the street committee to execute a contract for that purpose, without inquiring whether this authority had been strictly followed, held that a ratification

had been sufficiently alleged for the purpose of sustaining the petition, thus leaving the other question undetermined, as not being necessary to the case. Inasmuch, therefore, as the defendants deny the fact of ratification, the door is still open for them also to deny that the contract was made in conformity to the ordinances; for, if the ratification should not be sustained by proof, the authority conferred by the ordinances will become material. It is necessary, therefore, to examine the answers in this aspect of the case.

The points raised by the answers in this regard may be generalized as follows: First. That the mayor and chairman of the street committee did not advertise for bids and proposals as required by the ordinance of August 19th, 1873, before assuming to make the contract. Secondly. That no specifications were ever made by the city engineer as referred to in the advertisement that was made, and in the contract itself, and hence the contract was void. Thirdly. That no grade was established by the city engineer when the advertisement was made, nor when the contract was entered into; and that the power to establish such grade could not be conferred upon the engineer. Fourthly. That no notice was given to the property holders to do the work, as required by the third section of the ordinance of August 19th, as amended by that of October 21st. Fifthly. That the contract contained provisions repugnant to the ordinances, and did not pursue the terms thereof. Sixthly. That the contract did not correspond with the advertisements that were made.

I will take up these points separately.

First. As to the want of an advertisement for bids or proposals. The ordinance of August 19th, 1873, in authorizing the mayor and chairman aforesaid to make contracts for grading the sidewalks therein specified, directed them first to advertise for the period of thirty days for bids or proposals to fill up, grade, pave and curb, in part or in whole, the said sidewalks. This was a preliminary condition to be performed. A plea, therefore, denying that any such advertisement was made, would be a good plea. Kneeland v. City of Milwaukee, 18 Wis. 431; Wells v. Burnham, 20 Wis. 119. Such a plea is contained in the amended answer, filed February 20th, 1875. But the plea is a special one, denying, it is true, that any such advertisement for bids or proposals was made as required by the ordinance; but setting forth and showing what advertisement was made, and how it was published. It gave notice that proposals would be received at the mayor's office until a certain day named, to fill up to the grade and pave the sidewalks specified in the ordinance; describing the work to be done as prescribed in the ordinance; and stating that it would be paid for in bonds of the city, as also specified in the ordinance for that purpose; and that specifications of the

work would be prepared by the city engineer, and could be seen by calling at the mayor's office. It closed with these words: "Any other information desired will be furnished. The city reserves the right to reject any and all bids." It was signed by the mayor, in his official capacity; was dated the 14th of January, 1874, and was published in the Galveston Daily News from the 15th of January to the 16th of February inclusive, in every issue of the paper. It seems to me that this was a substantial compliance with the terms of the ordinance. It is objected that it was signed by the mayor alone, and not by the chairman of the street committee. I do not think that this was a fatal defect. It performed the office designed for it in the ordinance. It was a mere notice to the public that bids or proposals could be made at the mayor's office, and the mayor's official signature, as one of the committee, was sufficient to authenticate it. And I am unable to see that it was defective in any substantial respect. The defendant's counsel has criticised its terms as being too vague and general, and as including the whole work in one lump. This is not its necessary construction, and bona fide contractors ought not to be prejudiced by too nice and critical a construction of such an advertisement. If there was collusion between the plaintiff and the city officials, in making it vague and general, that is another matter which comes under the head of fraud. I think the advertisement shown by the plea was a sufficient compliance with the ordinance, and the demurrer to this part of the plea must be sustained.

Secondly. I have more difficulty with regard to the alleged want of specifications, which are referred to in the advertisement and in the contract itself. The advertisement states that specifications of the work for which proposals are invited will be prepared by the city engineer, and can be seen by calling at this (the mayor's) office. The contract declares that "all the above work is to be done and executed in accordance with the specifications of the city engineer, now on file in the mayor's office." The plea alleges that no such specifications were prepared at all, at any time before the contract was made, nor during the publication of the advertisement, and none such were ever on file, or to be found in the mayor's office. I do not think that the fact, that there were no such specifications, affected the authority of the mayor and chairman of the street committee to make the contract they did. Omaha v. Hammond, 94 U. S. 98. Parties desiring to bid may have been sufficiently informed on calling at the office what the nature and requirements of the work would be. And it would be hard to visit upon the contractors the neglect of the city engineer to have the specifications completed. The greater difficulty arises from the provision contained in the contract itself, requiring the work to be done according to the specifica-

tions declared to be then in the mayor's office. Their actual presence in the office at the time of executing the contract was not a material circumstance, if they had been prepared and were then in existence. The identity of the specifications referred to would be ascertained by extrinsic evidence. But if they were not in existence, the question arises whether the contract must not fail for want of certainty. It is true, they must be regarded as referred to for the benefit of the city, and the city declared them to be prepared and in the mayor's office. Is not the city estopped to deny their existence? If not forthcoming when applied for by the contractors, might the latter not proceed and do the work in the usual way in which such work is accustomed to be done? The contract itself specified of what materials the paving was to be made, as soon as the choice of the property-holders was determined. As to the other work of filling up, grading, etc., the mode of doing it, beyond what the contract itself prescribed, is a common and well-known process. I am inclined to think that it was optional with the contractors either to refuse to do the work for want of the stipulated specifications, and to seek damages for non-fulfillment of the contract in that regard on the part of the city, or to go on and do the work in the ordinary and accustomed mode. Had the contract been to do the work according to specifications to be prepared by the engineer, a failure to prepare them, on the demand of the contractors, would have given them this option. There are cases, undoubtedly, where specifications referred to in a contract are absolutely essential to its due certainty, and to a possible performance of it—as where a builder contracts to build a house according to certain specifications to be furnished by the owner, or alleged to be already prepared by him. But I am inclined to think that the contract in this case was capable of substantial performance without the specifications. Under this view, I shall hold the plea to be bad.

Thirdly. The fact that no grade had been established when the contract was made does not, in my judgment, vitiate it. There is nothing in the contract that ties it to a grade then established; nothing repugnant to, or that would prevent, the grade being fixed from time to time as the work progressed. I do not think that the want of such grade can be pleaded to the validity of the contract. See 2 Pars. Cont. p. 563, and note.

Fourthly. The plea that no notice was given to the property-holders to do the work, as required by the third section of Ordinance 21, as amended by Ordinance 26, has given me much perplexity. The terms of the proviso on that subject are as follows: "Provided, that it is herein made the duty of the street superintendent to serve written notice on all the property-owners, or their authorized agents, whose sidewalks may not be of

proper material and in conformity with grade, to construct the same within a period of sixty days after notice, in the manner and with one or the other of the materials named in the first section of this amendment; and any fault or failure to comply with the requirements of such notice, shall then authorize the mayor and chairman of the committee on streets and alleys to proceed to have constructed the sidewalks in front of the property of any defaulting property-owner or owners, as provided in the ordinance to which this is an amendment." Here the authority of the mayor and chairman "to proceed" is limited upon the failure of the property owners to comply with a certain notice to be served upon them. If no such notice was given, and no such failure occurred, it is difficult to see how the mayor and chariman derived from the ordinance the authority "to proceed" to have the sidewalks constructed by contract. By the ordinary rules of pleading (supposing this to have been a necessary condition to be performed before the making of a contract), the plaintiffs were not required to allege its performance in their petition. It would be for the defendants to plead its non-performance. They have done so. They allege that no such notice was given. It may be urged against the validity of the plea, that the contractors were not bound to know whether this condition had been performed or not. But certainly they were bound to know whether the officers with whom they dealt had authority to act for the city, and what was the extent of that authority. This is a matter that affects the authority of the mayor and chairman of the street committee. The matter was one of importance. It seriously affected every property holder. As at present advised, I must decide that the plea is a good one, and that the demurrer to it must be overruled.

Fifthly. It is pleaded that the contract contains provisions on their face repugnant to the ordinances, and does not pursue the terms thereof. I do not use the words of the plea. This is its substance. One point made is, that the proviso requiring the consent of the property holders to the kind of pavement to be laid, is different in its terms and scope from the provisions of the ordinance in that respect. This and other discrepancies are also set up in the amended answer filed May 29th, 1878. Without going into particulars on this point, it is sufficient to say, that having carefully examined the ordinances, I do not see that the contract can be said to be outside of or beyond them in any such sense as to make it void. The contract must necessarily descend to particulars which the ordinances could not be expected to state; but I do not perceive that it contains anything repugnant thereto, or that might not fairly be embraced therein. The severance of the contract for paving from that of grading and filling was considered by the supreme court and sustained, as was also the application of the proviso for the consent of the property owners to one part, and not to the other. This proviso, it is true, requires the consent of the property owners generally, whilst the ordinance only speaks of a majority. The want of correspondence in this respect only imposes a more rigid condition on the contractor, and if he consented to it, no one else can object. But, as remarked, without attempting a minute criticism of the two documents, it seems to me that the contract, as written, was fairly within the power of the committee to make. The demurrer to this plea is sustained.

Sixthly. The objection made in the same connection that the contract did not conform to the advertisement for proposals, I do not think is tenable. The officers, in making a contract, were not bound to follow the advertisement, provided they kept within the scope of the ordinances. Besides, the advertisement could only indicate general outlines, and could not be expected to contain all the minutiae of a contract. The demurrer to this plea is also sustained. The disposal of these general subjects goes far to dispose of the whole demurrer. There are, however, some other matters contained in the amended answer filed May 29, 1878, which are demurred to, and which it is necessary to notice.

Some difficulty is experienced in separating this answer into distinct parts, or pleas, and in distinguishing the latter from mere argument and statements of law. As well as I can, I will consider its different parts so far as not already disposed of.

The first two pages (I shall have to refer to it in this way) consist of further demurrers to the petition, which have been disposed of by a previous order made at this term. The third page commences with a detailed statement of certain proceedings which are alleged to have taken place in the common council in October, 1873, being a report of proceedings by the mayor and chairman of the street committee, the adoption of the amended ordinance of October 21st, 1873, the subsequent ordinance of February 3d, 1874, the advertisement for proposals, the inadequacy of the bonds authorized to be issued to meet the payments of the contract, concluding with an averment that the ordinance of February 3, 1874 (No. 37), was procured, and the advertisement for proposals was made, collusively with the plaintiffs for the fraudulent purpose of securing the contract to them, and that the contract was obtained and procured by fraud. Without being able to see the relevancy of much of this statement, still regarding it as introductory to the charge of fraud. I think it may stand for that purpose only, including the short paragraph following, charging the plaintiffs with suborning bidders, etc. Several following paragraphs are covered by what has been already said.

The next portion of the answer necessary to be further considered, is that extending from the middle of page eight to the end of the first paragraph on page 10, purporting to set out the proceedings which took place in the common council at its meetings on the 24th and 28th of March, 1874, which are relied on by the plaintiffs as recognizing, ratifying and confirming the contract, but which the defendants deny to have that effect, and contend that, instead of a ratification, it was a novation, or the making of a new contract between the plaintiffs and the city. Since the plaintiffs referred to and partially set out the purport of these proceedings in their amended petition, and relied thereon for the purposes of ratification, the defendants had a right (analogous to the right of oyer at the common law) to set out the whole proceedings, including the reports of the majority and minority of the committee on that occasion. This being done, the construction and effect of the action of the common council on said reports are matters of law. The majority of the committee reported that the contract made with the plaintiffs was in some particulars, in their opinion, improvidently entered into by the contracting parties on the part of the city, particularly in the fact that the property owners were not allowed some particular time within which to make the contemplated improvements. They reported, however, that after an interview with the plaintiff Hitchcock, they had arranged with him to make such changes in the contract as would obviate and remove all objections to it. These were, to reduce the price for curbing from 45 to 30 cents; for edging from 9 to 6 cents, paying in bonds as originally contracted for; and, thirdly, to apportion the cost of filling equitably against the respective pieces of property to be improved; fourthly, to give the property owners thirty days to comply with the ordinance directing the improvements to be made. They also recommended an ordinance amendatory of that of February 3d, 1874 (No. 37). These amendments were intended to secure the due construction of the sidewalks by those property owners who should elect to construct the same. These recommendations of the majority of the committee were adopted by the council. The answer further alleges that the plaintiffs, in violation of the agreement so made with the committee, as reported by them, refused to carry out the same, and published a notice on the 7th of April claiming a right under the original contract, to do the whole work. This plea, in effect, denies that the contract originally entered into was ratified by the common council, but sets up that, by way of compromise, a new contract was entered into, which both parties acceded to, and that the plaintiffs afterwards refused to carry it out. Now, if all the facts can be proved which are set out in the report of the committee, and rehearsed in the plea, to wit, that the plaintiffs did

make a new contract as stated, it seems to me, as stated in the former opinion, that it makes a valid defense to this action. The plea is, therefore, in my opinion, a good plea, and the demurrer to it must be overruled. The same plea, in effect, but stated with more categorical precision, is made at the conclusion of the answer, on the 12th and 13th pages thereof, and the demurrer thereto must in like manner, be overruled. I have revised a form of judgment prepared by the plaintiffs' counsel, which correctly expresses the conclusions to which I have come.