MOSELAGE v. BENEVOLENT & PROTECTIVE ORDER OF ELKS.·

[78 South. 947, Division B.]

*Building contract. Specifications.*

Where a contract for the restoration of a building provided that
all work was to be done as it was in the original building ex-
cept "changing the windows in the lodge room from casement
· to windows hung on weights" and that "A" shall be the sole
arbiter of what work shall be new and what shall be repaired,
such a contract was not void for uncertainey and in such case
where plaintiff the contractor, performed the work in accord-
ance with such contract and "A" certified to such work, he was
entitled to recover, although there was no specifications pre-
pared as provided by the printed portion of the contract re-
quiring work to be done according to specifications, prepared
by "————— Architect" since in such case defendant by per-
mitting the work to go on without reqairing further specifica-
tions waived this requirement.

APPEAL from the circuit court of Coahoma county.
HON. W. A. ALCORN, JR., Judge.

Suit by J. H. Moselage against the Benevolent &
Protective Order of Elks.   From a judgment based on
a peremptory instruction for the defendant, plaintiff
appeals.

The facts are fully stated in the opinion of the court.

*Maynard & FitzGerald,* for appellant.

The court will see from the statement of facts that
the case is very simple, on account of the fact that the
transcription of the record does not correctly show
the original contract, which is the original of Exhibit
"A" of the declaration.   We have secured an agree-
ment of counsel to introduce ꞏbefore this court the
original of Exhibit "A" provided this court will consent
thereto.   The court will see by an examination of the
original contract that article 1 thereof reads as follows:

Article 1. The contractor shall and will provide the materials and perform all the work for the complete restoration of the Elks Home at Clarksdale which was recently damaged by fire, changing the windows in lodge room from casement to windows hung on weights. All work to be done as it was in the original building and under the direction and to the satisfaction of B. C. Alsup, of the Firm of Alsup & Smith, Architects, as shown in the drawings and described in the specifications prepared by ——, Architect, which drawings and specifications are identified by the signatures of the parties hereto, and become hereby a part of this contract."

When the contract was sought to be introduced in the lower court, objection was made to it for the reason that it was not complete; that it called for plans and specifications, which were not attached to it. Mr. Moselage testified that there never were any plans and specifications, and none ever intended to be attached. The contract itself set forth fully what was to be done; that is to say: "The contractor shall and will provide all the materials and perform all the work for the complete restoration of the Elks Home at Clarksdale, which was recently damaged by fire, changing the windows in the lodge room from casement to windows hung on weights. All work to be done as it was in the original building, and under the direction and to the satisfaction of B. S. Alsup of the firm of Alsup & Smith." (Art. 1, Exhibit "A," R. P. 6).

Nevertheless, objection to the contract was sustained by the court in these words: "I sustain the objection. I don't think he can prove it in that way; the contract speaks for itself, and is not a complete contract as I understand it." So the sole and only question in the case on appeal, is whether or not the contract and evidence of Mr. Moselage is competent.

The contract being all the contract in existence was competent evidence. Womble v. Hickson, 121 S. W. 401.

In the case of *Hitchcock* v. *Galveston*, it was held that a contract requiring construction in accordance with specifications on file, and there being no specifications on file, is not void for uncertainty where the contract itself specifies the kind of material, and there is a common method of construction. *Hitchcock* v. *Galveston*, 12 Fed. Cases No. 6534, 3 Woods, 278.

Specifications not given even signed by the parties are admissible as evidence as explanation of a written contract of a building. *Maxstead* v. *Seymour*, 22 N. W. 219; *Myer* v. *Fruin*, 16 S. W. 868; *Baum* v. *Covert*, 62 Miss. 113; *Fallon* v. *Lawler*, 3 Cent. Rep. 45, 102 N. Y. 228.

The only evidence attempted to be introduced, was the evidence on the part of Mr. Moselage that this contract, as shown, was the sole and only contract between the parties, and that the work was done under the contract. The evidence of Mr. Moselage did not contradict or vary the writing in any particular. The fact that the parties left the name of the architect in article 1 blank shows a patent defect in the contract. The contract is a written form and the typewriting which is underscored as above shows a complete method of construction and evidence is admissable to explain that the parties never intended to fill in the blank which was never filled in. Corpus Juris., p. 536, section 498. "Contracts." "Where a contract is ambiguous it will be construed most strongly against the party preparing it or employing the words concerning which doubt arises. The rules just stated are of course peculiarly applicable where the contract is on a printed form prepared by one of the parties." 13 Corpus Juris., pp. 544-545, Sec. 516.

*D. A. Scott* and *E. M. Yerger,* for appellee.

By referring to the plaintiff's declaration it will be observed that the alleged cause of action upon which the appellant sought recovery is set forth not only substantially, but with great particularity. It was, amongst other things, alleged that the contract, of which a paper purporting to be a copy, was attached as exhibit A to and as a part of the declaration, contained in part this language: "All of the work to be done as it was in the original building, and under the direction and to the satisfaction of D. C. Alsop of the firm of Alsop & Smith, architects, as shown by drawings and specifications prepared by the said architects," record page 4, and by reference to section one of said exhibit as this language should be carefully noted. "Which drawings and specifications are identified by the signatures of the parties hereto and become hereby a part of this contract."

It should also be borne in mind that this exhibit "A" alleged contract, as filed with the appellant's original declaration, did not have attached to it any drawings and specifications identified by the signatures of the parties, or otherwise. Notwithstanding the fact that such drawings and specifications were manifestly contemplated by the parties to this alleged contract, and before the same could have become a complete or completed contract, such drawings and specifications must necessarily have been prepared and identified by the signature of the parties who are to be bound thereby. We therefore confidently submit that when later on during the progress of the trial this so-called exhibit "A" contract was offered in evidence the trial court very properly sustained the objections made by the appellee to the competency and admissibility of the same. These objections will be found on page 22 of the record.

Without multiplying the authorities further to sustain this plain proposition of law, we submit with confidence that the action of the court below should be affirmed.

STEVENS, J., delivered the opinion of the court.

Appellant, a contractor and builder, was plaintiff in the court below, and Clarksdale Lodge No. 977, Benevolent & Protective Order of Elks, was defendant. Plaintiff sued to recover a balance of one thousand, two hundred fifty-one dollars claimed to be due under a contract executed by the defendant lodge, by the terms of which appellant was "to provide all materials and perform all the work for the restoration of the Elks' Home at Clarksdale, which was recently damaged by fire, changing the windows in lodge room from casement to windows hung on weights. All work to be done as it was in original building, and under the direction and to the satisfaction of B. C. Alsup of the firm of Alsup & Smith, architects, as shown on the drawings and described in the specifications prepared by———, architect, which drawings and specifications are identified by the signatures of the parties hereto and become hereby a part of this contract." The contract was upon a printed form containing twelve articles of agreement, and that portion of the language above quoted, referring to the drawings and specifications as a part of the contract, appeared in print on the original agreement, while the material portion obligating appellant to restore the damaged building, with the one exception of changing the windows from casement to windows hung with weights, and requiring him to do the work under the direction and to the satisfaction of Mr. Alsup, the architect, was typewritten. Article 2 is in printed language, and reads:

"Art. II. It is understood and agreed by and between the parties hereto that the work included in this contract is to be done under the direction of the. said

architect, and that his decision as to the true construction and meaning of the drawings and specifications shall be final. It is also understood and agreed by and between the parties hereto that such additional drawings and explanations as may be necessary to detail and illustrate the work to be done are to be furnished by said architect, and they agree to conform to and abide by the same so far as they may be consistent with the purpose and intent of the original drawings and specifications referred to in art. I.

"It is further understood and agreed by the parties hereto that any and all drawings and specifications prepared for the purposes of this contract by the said architect are and remain his property, and that all charges for the use of the same, and for the services of said architect, are to be paid by the said owner."

Near the conclusion of the contract is the following typewritten provision:

"It is further understood and agreed that B. C. Alsup shall be the sole arbiter of what work shall be new and what shall be repaired."

The sum agreed to be paid to the contractor was five thousand, two hundred fifty-one dollars, and the declaration charges that the work has been completed, that the plaintiff has been paid the total sum of four thousand dollars, that the balance due is one thousand, two hundred fifty-one dollars, and that for this sum a certificate has been given appellant by the architect. The written certificate is attached to the declaration as "Exhibit B." The original was introduced by plaintiff on the trial of the cause, and the material portion of the certificate reads:

"Certificate No. 1630. Alsup · & Smith, Architects. Memphis, Tenn., May 15, 1912. ' $1,251.00   To Clarksdale Lodge, No. 977, B. P. O. Elks: J. H. Moselage, contractor for repairing of fire damage to lodge build-

ing, entitled to a payment of twelve hundred and fifty-
one dollars.

Amount of contract ......................$5,251.00
Amt. previous paid ............$4,000.00
Amt. of this certificate .......... 1,251.00

Total to date ..............$5,251.00     $5,251.00

ALSUP & SMITH,
"Per B. C. ALSUP."

The defendant lodge refused to pay the balance, and
to the declaration exhibited against it interposed a
plea:

"That it did not undertake and promise to pay, and
is not indebted to the plaintiff as charged by the plain-
tiff in his declaration."

And attached to this plea of the general issue was a
notice that the defendant expected to prove:

"That there were numerous and glaring defects in
the work, in the material used and in the manner that
the said work was done, and that said defects were so
obvious and apparent as to indicate and prove that
the certificate was obtained by fraud."

In presenting this case to the court and jury, the
plaintiff testified that he had performed the work and
furnished the material in strict accordance with the
written contract, a copy of which had been filed as
"Exhibit A" to the declaration, but objection was made
to the introduction of this contract, "because the paper
calls for a drawing and specifications and details, and
provides that they shall be made a part of the con-
tract and are a part of the contract, . . . and it is
not a complete paper," and, secondly, the plans and
specifications were not exhibited with and made an
exhibit to the declaration, and "the most controlling
part of the contract is not with the paper nor with the
declaration, and the paper is meaningless without the
drawings, specifications and details called for by it,

and therefore the testimony is incompetent.'' When ob-
jection was made to the introduction of the original
contract, the plaintiff showed by the witness that there
were no drawings and specifications, but that the
writing as offered contained the full agreement between
the parties.  Nevertheless, the court sustained the
objection to the contract, and the plaintiff was forced
to rest his case.  Upon motion, a peremptory instruc-
tion was then given in favor of the defendant, and
from the judgment based thereon appellant appeals.

The record does show that counsel for the plaintiff,
when objection was made to the introduction of the
contract, asked permission of the court to amend the
declaration; but when the court announced, upon the
insistence of counsel for the defendant, that the case be
continued in the event the amendment was allowed, the
plaintiff withdrew his request to amend and stood upon
his declaration as filed.  The trial judge also sustained
an objection to the introduction of the written certificate
given plaintiff by the architect.

It was error to exclude the written contract and the
written certificate given by the architect.  In *Womble*
v. *Hickson,* 91 Ark. 266, 121 S. W. 401, the building
contract stipulated that the house was to be like the
''Rowton house.''  Objections were there made to the
introduction of the contract because the specifications
were not presented, and the objection was overruled
and the contract admitted in evidence.  In *Hitchcock* v.
*Galveston,* Fed. Cas. No. 6,534 (3 Woods, 287), the
circuit court, as reflected by paragraph 10 of the head-
notes, held:

''Where the contract itself required the work to be
done according to the specifications on file, and none
were on file, but the contract itself specified the ma-
terials, and there was a common and well-known process
of doing the work, *held,* that the contract was not void
for uncertainty, and the contractors might proceed to

do the work in the usual and ordinary way, or refuse to perform the work for want of specifications, and seek damages for the nonfulfillment of the contract in that respect.''

In that case the contract declared that:

''All the above work is to be done and executed in accordance with the specifications of the civil engineer now on file in the mayor's office.''

This case is stronger on the facts against the con-tractors than the case at bar. In the present case the original contract which has been sent for our inspection shows on its face that the referee to the drawings and specifications was a printed form, and that the name of the architect following the language ''specifications pre-pared by'' is left blank. The present contract also puts it beyond dispute that Mr. Alsup is to be the sole arbiter of what work shall be new and what shall be repaired, and that all work is to be done under his supervision and to his entire satisfaction. The present case is not a contract for the construction of a build-ing, but for the restoration or repair of a building damaged by fire. It is manifest that the Elks' home was to be restored just like it was before the fire, with the one exception that the windows were to be changed from casement to windows hung on weights. In other words, the original contract shows exactly what work was to be done, and the contract is not void for un-certainty, especially when it is remembered that Mr. Alsup was personally to supervise the work and be the sole judge as to any details or disputes. The proof further tends to show that the work had been done in strict accord with the contract, that this work met with the approval of Mr. Alsup, that the defendant lodge had paid four thousand dollars upon the work done, and that plaintiff held the architect's written certificate for the full balance. It is nowhere intimated or shown that the defendant lodge objected to the plan or method by which the work was being done, but, on the contrary,

that the defendant selected the architect, and that the contract entered into was prepared by the architect, and that all things, thus far done have been to the entire satisfaction of the architect. In the absence of a more substantial showing, justice certainly requires that the plaintiff be paid. If the defendant permitted the work to be done without requiring further specifications to be agreed upon in writing, it should be held to have waived this requirement, and the plaintiff should be permitted to show the facts. In *Maxted* v. *Seymour,* 56 Mich. 129, 22 N. W. 219, the plaintiffs, who were there contractors and builders, "put in evidence specifications not signed by the parties, but such as were claimed to have been agreed upon by them when the contract was made; also, testimony as to what kind of a front the building was to have. This testimony was objected to on the ground that this was offered before the written contract was made, and that the testimony contradicted the written contract." The court held that the objection was not well taken; that "without this testimony the contract was imperfect. The plans and specifications were already understood, but had not been written out by the architect. It was no fault of the plaintiff that they were not, and the only evidence of what they were was given and it was proper." So we say here that, unless the contract offered in evidence was void upon its face for uncertainty, then it should have been received in evidence. See, also, *Myer* v. *Fruin* (Tex.) 16 S. W. 868.

*Reversed and remanded.*