## WALDO vs. THE CHICAGO, ST. PAUL & FOND DU LAC RAILROAD COMPANY and others.

A railroad company cannot lawfully engage in any distinct branch of business not authorized by its charter, for the purpose of raising funds to accomplish the object for which it was created.

The Chicago, St. Paul and Fond du Lac Railroad Company had no power under its charter to buy and hold lands situated at a distance from its road, and which it did not need and could not use in constructing or operating its road.

Whether in case of a direct grant of such lands to the company, the grantor could reclaim them on the ground that the grantee was incapable of taking title, or whether the title would be defeasible only by the state, and how the rights of the grantor and of the company in that respect are affected by the fact that the conveyance in this case was to a third party in trust for the company, the court does not determine.

Fraudulent representations as to the pecuniary condition of a railroad company and its past earnings, made by its officers and other persons employed by it to solicit subscriptions to its stock, while engaged in obtaining such subscriptions, must be regarded as made by them in the execution of their agency.

In an action to set aside certain conveyances of land alleged to have been made by the plaintiff to the president of a railroad company in trust for the company, the complaint averred that the president of said company and other persons employed as its agents in soliciting subscriptions to its stock, had induced the plaintiff to execute such conveyances of his land in exchange for stock of said company, by false and fraudulent representations that the company was in good pecuniary condition and repute; that the part of the road

June Term,
1861.

WALDO
v.
CH., ST. P. &
F. DU L. R.
R. Co. et al.

completed was earning money very rapidly, and that the net earnings of the road for six months then last past, had been equal to four and a half per cent. upon the entire cost of the road; whereas they well knew at the time that said company was on the verge of bankruptcy, and was without credit, its bonds and stock of little value, and the road not earning any such sums as was so represented. *Held*, on demurrer, that the complaint stated facts sufficient to constitute a cause of action.

APPEAL from the Circuit Court for *Jefferson* County.

This was an action to have certain conveyances of land, made by the plaintiff to one *Wm. B. Ogden*, and by the latter to one *Mahlon D. Ogden*, set aside, or declared void, and to compel a reconveyance to the plaintiff. The complaint was filed January 31, 1859, and after stating that the *Chicago, St. Paul & Fond du Lac Railroad Company*, in the fall or winter of 1856, appointed a committee to canvass for subscriptions to the stock of said company, to be paid by conveyances of land to said *Wm. B. Ogden*, and that Bradley, Pease, Wood and Johnson, who were members of said committee, came during said winter to the county of Jefferson, and that various public speeches were made by them and said *Ogden*, to induce subscriptions to said stock, payable in land, and that various committees of citizens were appointed to co-operate with them in canvassing for such subscriptions, alleged that in February and May, 1857, the plaintiff conveyed to said *Ogden* certain lands by warranty deed in the usual form, and received therefor $6200 of the stock of said company, and that the plaintiff was induced to make said conveyance for said stock solely by means of certain false and fraudulent representations made at public meetings and in private, by said *Ogden* and said Bradley, Pease, Wood and Johnson, and by other persons who acted as citizen committees and stated what said *Ogden* and the others above named directed them to state, believing all that was told to them, which representations were in substance as follows: That said company under a former organization, when it was know as the Rock River Union Valley Railroad Company, had been largely in debt, and that the present company had succeeded to their rights and liabilities, and after securing their portion of the land grant from the states of Wisconsin

June Term, 1861.

WALDO
v.
CH., ST. P. &
F. DU L. R.
R. Co. et al.

and Michigan (donated by the U. S.), had become in good credit, and the former creditors of the old company, who had also been creditors of the new, wishing to share in said land grant, had nearly all consented to converting their claims against said company into stock, and that all the large debts of the company had been already satisfied by conversion into stock, and that this process was still going on and would soon be completed, so that the company would not owe a dollar; that the company was in good condition and credit; that the net earnings of the finished portion of the road, from Fond du Lac to the La Crosse Junction, and from Chicago to Janesville, for the last six months, had been equal to four and a half per cent. on the entire cost of the road, represented by three millions of stock, and that the directors would have declared a semi-annual dividend of four and a half per cent., but they thought it best to use said earnings to carry on the road, and they had been carried to the construction fund instead of being divided among the stockholders; that the company only needed $600,000 in land, mortgages, bonds and cash subscriptions, to complete the connecting link between La Crosse Junction and Janesville, and were getting it without difficulty; that the stock would soon be at par and above par; that the land grants made to said company were worth, at a low estimate, thirteen and a half millions of dollars, and that the road, when completed from Chicago to Fond du Lac, would certainly pay dividends of ten per cent. per annum, &c.; whereas in fact the said *Ogden*, Bradley, Pease, Wood and Johnson well knew that the company was at that time indebted to its mortgage bond holders about $1,800,000, and to other creditors unsecured a floating debt of about $1,600,000, and was not in good condition, but had no available resources with which to pay the principal or interest of its debts, and was on the verge of bankruptcy, and was without credit among capitalists, and its bonds and stock of very little value, and that the portion of the road completed was not earning any such net sum as four and a half per cent. for six months upon the cost thereof, as represented by the stock, and that said net earnings, whatever they may have been, had not been applied to extend the

June Term,
1861.

WALDO
v.
CH., ST. P. &
F. DU L. R.
R. Co. et al.

road, but to pay former debts and the expenses of the company; that the $600,000 proposed to be raised to enable the company to build its road from Janesville to La Crosse Junction, would have very little value for that purpose, and would be swallowed up by the creditors of the company; that there was no prospect of the completion of said road from Janesville to said junction for years, nor until the road should be in the hands of its bondholders, or purchasers at a sale under their mortgage; that there was no good reason to suppose that the company would ever earn enough to pay more than the interest on its debts, or that its stock would ever be worth any thing; and that the lands granted to the company were really worthless, and a large portion of them had long been subject to private entry at fifty cents per acre, and would be a poor investment at any price when taxes would have to be paid. The complaint also alleged that all the proceedings of said *Ogden*, and of the said committee of the company, were fraudulent in intent, and designed only to obtain so much more land as assets before the final bankruptcy of the company; and also that the plaintiff parted with his land solely in consequence of said false representations, and that he is ready and able to surrender the stock issued to him, to be cancelled as the court shall direct. The other allegations of the complaint are sufficiently stated in the opinion of the court. The company and the *Ogdens* demurred separately on the ground that the complaint did not state facts sufficient to constitute a cause of action. The company specified as grounds of demurrer, 1. That it did not appear from the complaint that said Wood, Pease, Bradley and Johnson constituted a committee appointed by the railroad company, or that they had power to represent the company in any manner whatever. 2. That it did not appear that said persons or *Wm. B. Ogden*, or either of them, made any of the alleged fraudulent representations with the knowledge or by the direction of the company, or that the company ever authorized the representations to be made. 3. That it does not appear whether the plaintiff relied upon the representations made by the persons above named or upon those made by the citizen's committee, who are alleged to have

acted in good faith. 4. It does not appear that the plaintiff was defrauded by the alleged representations, or that any of them were made to him. 5. That the representations set forth in the complaint were not fraudulent representations of the company. 6. That it appears by the complaint that the plaintiff was a party to an illegal and fraudulent transaction in conveying his lands to *Ogden.* 7. That it appears that the deeds made by the plaintiff were unconditional, and not trust deeds. The court overruled the demurrers, and the defendants appealed.

June Term, 1861.

WALDO.
v.
CH., ST. P. &
F. DU L. R.
R. Co. et al.

*Enos & Hall*, for appellants:

1. In order to avoid a contract on the ground of false and fraudulent representations, the following facts must appear: (1.) There must be a misrepresentation of a material fact, constituting the basis of the contract. (2.) The injured party must not only rely upon the fraudulent statement, but must have a right to rely on it in the full belief of its truth. (3.) The representations must relate to matters of fact, not to matters of opinion or judgment. (4..) The fraud must work an actual injury. (5.) The defrauded party, upon the discovery of the fraud, must immediately rescind the contract, and return what he has received upon it. (6.) If any considerable time has elapsed since the making of the contract, before the fraud is discovered, that should appear, to rebut the presumption of waiver. 2 Parsons on Con., 266–277; *Weed vs. Page*, 7 Wis., 503. 2. The respondent, upon the facts stated in his complaint, is not entitled to the relief sought on the ground that the railroad company acted *ultra vires* in issuing its stock and taking land in payment therefor. (1.) If the issue of stock to the respondent in payment for his lands was illegal, and in fraud of the rights of other stockholders, he was an active participant in that illegal and fraudulent act. (2.) The deed is not void unless the company is expressly forbidden to take it. A corporation without power to purchase and take lands, can hold them by a title defeasible to the state. Ang. & Ames on Corp., §§ 152–3; *Runyan vs. Coster's Lessee*, 14 Peters, 122; *Fairfax vs. Hunter*, 7 Cranch, 621; *Burns vs. M. & M. R. R. Co.*, 9 Wis., 450, and the cases there cited. (3.) The

June Term,
1861.

WALDO
v.
CH., ST. P. &
F. DU L. R.
R. Co. et al.

trust not being declared in the deed or other writing, the title vested absolutely in the grantee, and no one but the creditors of the company could question his title. R. S., chap 84, secs. 1, 7, 8, 9; 18 N. Y., 517. (4.) The railroad company had the power to take the lands in question. Laws of 1848, p. 161; Laws of 1850, pp. 42 and 175; Laws of 1851, pp. 203–4; Local Laws of 1855, p. 179; Gen. Laws of 1856, p. 239; Local Laws of 1857, pp. 25 and 1124; *Clark vs. Farrington*, 11 Wis., 306.

*Weymouth & Caswell*, for respondents, to the point that the company could not take and hold the land in question, cited R. S. 1849, chap. 54; chap. 79, sec. 7; Story on Con., § 311; *Dart. Coll. vs. Woodward*, 4 Curtis, 489; 2 Kent, 398; 3 Seld., 328–40; 13 Curtis, 277; 17 Barb., 397; 3 Kern., 598; 15 Ohio, 26; 4 Kern., 358; Redfield on Railways, 11, note 3, and 124–5; Pierce on Am. R. R. Law, 397, 12 and 13. 2. Parties contracting with corporations beyond their powers, where the transaction is neither *malum prohibitum* nor *malum in se*, are not *in pari delicto*, and may be relieved in a court of equity. *Tracy vs. Talmadge*, 4 Kern., 162, and cases cited. 3. Whether the directors or company by vote directed the false representations, is immaterial.— The company cannot hold the land and repudiate the fraud of the agents who made the purchase. *Newton vs. Bronson*, 3 Kern., 587; Redfield on Railways, 219, N. 1; Dunlap on Agency, 301, note 1, and 303; 2 Eng. Cases, 494; *Sandford vs. Handy*, 23 Wend., 260. 4. *Wm. B. Ogden* is estopped by his agency as president of the company from taking title in his own right for land bought with the means of the company. Neither of the *Ogdens* acquired any right to the land, because they paid no consideration therefor. They cannot hold for the company, because the company cannot take and hold such lands. If there is any trust in *Ogden* it is for the benefit of the grantor. 2 Johns. Ch. R., 405; Willard's Eq., 187–8, 603; 49 Law Lib., 105–144; 2 Blacks., 296.

December 30.   *By the Court*, COLE, J.   In the case of *Clark vs. Farrington*, 11 Wis. R., 306–424, this court, among other things, held that a railroad corporation could not engage in any distinct

June Term, 1861.

WALDO v.
CH., ST. P. &
F. DU L. R.
R. Co. et al.

or separate branch of business not authorized by its charter, for the purpose of raising funds to accomplish the objects for which it was created ; that while the corporation, in the exercise of the powers conferred upon it by its charter, might adopt any convenient means proper in themselves, to accomplish the objects of its creation, it could not embark in the business of banking, or manufacturing, or speculating in real estate, to raise money to build its road, for this would be acting outside of its charter. The distinction indicated by these illustrations, is plain, important and fundamental. A railroad corporation created for the purpose of building and operating a railroad, might buy its depot grounds, its road bed, its rolling stock, and pay for these things in the stock of the company, without exceeding its powers or violating any principle of public policy. It might exchange its stock for road ties, or pay in stock for the grading of its road, as well as sell its stock for the money with which to pay for these necessary and indispensable things, and still it would be doing nothing more than the company was authorized to do. And in that case, we held, if the corporation should resort to a transaction of a twofold character, and receive a bond and mortgage in payment of a stock subscription, and then sell the securities to raise money with which to build and equip its road, it would still be acting within the powers conferred upon it by its charter. But when a corporation created for the purpose of building and operating a railroad, goes into the business of banking, or manufacturing and selling goods, or dealing and speculating in real estate, because its corporators or board of directors think such adventures may be profitable, or if a bank should go to building and operating a railroad for like reason, it is easy to see that in each instance the corporation is attempting to transact business which, under its organic act, it has no right or power to do. And if the corporation might embark in a separate and distinct business, not contemplated by its charter, merely because it was supposed it would be profitable and increase its means and resources, there would be no safety to the public in granting any special charters, and none to individuals who might invest in the stock of the company.

June Term,
1861.

WALDO
v.
CH., ST. P. &
F. DU L. R.
R. Co. et al.

These considerations are so obvious and familiar, and rest upon such common and elementary principles of law, that it is unnecessary to dwell upon them. We have, therefore, no difficulty whatever in arriving at the conclusion that the appellant conld not go to speculating in real estate, and had no power under its charter to buy and hold lands situated at a distance from its road, which the company did not want and could not possibly use in constructing or operating its road, but our real difficulty in the case has been to determine what became of the title to the lands conveyed under the circumstances disclosed in the complaint. This question we have examined with all the care and diligence we were able to bestow upon the case, consistently with our other duties, and we have not arrived at any satisfactory result upon it. We think the demurrer to the complaint was properly overruled upon another ground, which we will presently notice, but our desire was to pass upon the main question in the cause.

In the present case the respondent states that for the purpose of paying his subscription to the stock of the company, he conveyed to *William B. Ogden* the lands mentioned in the complaint, to hold the same in trust for the corporation. He avers that the lands are not all timber or wood lands, that there was no stone quarry or gravel bed thereon, that they are not on or contiguous to the line of the railroad, and, as located, could be of no use or advantage to, and were not necesssary for the purposes of, the road. The complaint further alleges that *William B. Ogden* has conveyed the lands to *Mahlon B. Ogden,* who took the conveyance with full notice of the circumstances under which they were obtained from the respondent, and holds the same for the use and benefit of the company. From these allegations it would seem that the corporation proposed embarking in the business of buying and selling real estate as a matter of speculation and profit, a thing which it clearly had no right to do. It was authorized to take and hold such lands and real estate as were necessary and proper for the use and enjoyment of its road, but no more. But what becomes of the title of lands which are conveyed to a railroad company, or *to* some

June Term,
1861.

WALDO
v.
CH., ST. P. &
F. DU L. R.
R. Co. et al.

one for its benefit, by a party who must have known that the company does not want the lands for the purposes of its road, but takes them intending to speculate in the transaction? We suppose the general rule is that persons dealing with a corporation are bound to take notice of the extent of its chartered powers; and when a grantor conveys lands to a corporation, under a contract which it is beyond its power to make, can he reclaim them on the ground that his grantee has no power, under its charter, to take the title for such a purpose? Or does a corporation take and hold the title like an alien at common law, defeasible only by the state? See *Leazure vs. Hillegas*, 7 S. and R., 313; *Baird vs. the Bank of Washington*, 11 id., 411; *Goundie vs. Northampton Water Co.*, 7 Barr, 233. It is urged that when a grantor conveys lands to a railroad company, or to a trustee for its benefit, which he knows the company does not want and cannot use for the purpose of building and operating its road, he is a party to the illegal contract, and cannot claim relief in a court of equity. He becomes, it is said, a willing participator in the unlawful contract, and therefore should meet the consequences of his own act. On the contrary, it is said that the restriction is directed against the corporation alone, to prevent it from engaging in illegal transactions, and that where it obtains real estate for a purpose not authorized by its charter, it can be compelled, in a suit in dissaffirmance of the contract, to restore the land which it has obtained. In the present case it will be observed that the lands were conveyed to a trustee, impressed with a trust which the law does not sanction; and does this change the law of the case, or affect the rights of the respondent? If he could reclaim the lands had they been conveyed directly to the company, ought he not to do so when they are conveyed to a trustee for its use and benefit? These questions have presented themselves to our consideration in the examination of this case, and we should have been glad to have decided them, had we come to a satisfactory conclusion upon them. They are interesting and important and controlling in this case; but we are compelled to leave them for further argument and consideration.

June Term, 1861.

WALDO
v.
CH., ST. P. &
F. DU L. R.
R. Co. et al.

But upon the other ground, that the deeds were obtained from him by false and fraudulent representations as to the pecuniary condition of the company, we think the respond-ent shows himself entitled to relief. He alleges that *Wil-liam B. Ogden*, and the persons acting with him in soliciting stock subscriptions, represented that the company was in good pecuniary condition and repute; that the part of the road completed from Fond du Lac to the La Crosse Junction, and from Janesville to Chicago, was earning money very rapidly, and in fact that the net earnings of the road for six months then last past, had been equal to four and one half per cent. on the entire cost of the road, which amounted to three millions of stock, while at the time they well knew that the company was on the verge of bankruptcy, and about to fail, and was without credit, its bonds and stock of little value; and that the road in operation was not earning any such sums as were represented.

It is very clear that those representations as to the pecu-niary condition of the company and the earnings of the road, were material, and were such as the respondent had a right to rely upon when he sold his land for the stock of the cor-poration. He could not know what the road was earning, or that the company, instead of being in a sound financial condition, was just upon the eve of bankruptcy. It is evi-dent that these matters, which fixed the value of the stock, could only be known to the agents and officers of the road. They had access to the books and records of the company, knew what the road was earning and whether the corpora-tion was solvent, and nothing was more reasonable or natu-ral than that a party about to subscribe for stock should re-ly on the statements of its officers and agents who were around soliciting subscriptions. It is said that the company ought not to be held responsible for the misrepresentations of its agents, but we think otherwise. They were going about the country obtaining subscriptions, and whatever fraudulent representations they made as to the condition of the road and the value of the stock while doing this, must be deemed to be made by them in the execution of their agency and for which the company is liable. This we think

is very clear from the authorities. *Sanford vs. Handy*, 23 Wend., 260; *Gibson vs. D'Este*, 21 Eng. Ch. R., 542; Younge and Collyer, 542, 570; *Phil., Wilmington & Baltimore R. R. Co. vs. Quigley*, 21 How. (U. S.), 202.

We therefore think that if the allegations of the complaint in respect to these false and fraudulent statements of the agents shall be sustained by the proof, the respondent will be entitled to have the contract rescinded on the ground of fraud.

The order of the circuit court overruling the demurrer is affirmed.