The opinion of the court was delivered by
Nicholls, C. J.
The prayer of plaintiffs petition is, that, after due proceedings, defendant be adjudged guilty of usurping, intruding into, and unlawfully exercising the franchise and privilege of public warehouseman in the City of New Orleans and State of Louisiana, and that judgment be rendered excluding said defendant from said franchise and privilege, and that defendant, the Southern Pacific Company, its officers, agents, employees and representatives, be perpetually enjoined, restrained and prohibited from conducting and carrying on, either by its officers, agents, employees, and representatives, or directly or indirectly, through the instrumentality of any other person, firm, partnership or corporation, from hereafter transacting, carrying on, or conducting, the business of a public warehouseman in the City of New Orleans, and State of Louisiana; from issuing warehouse certificates, negotiable or non-negotiable; from receiving goods, wares and merchandize, and agricultural products, on storage, for pay or reward; *1824 from leasing, purchasing or owning any building to be used as a public warehouse.
Defendant filed an exception — that plaintiff’s petition disclosed no cause of action, which was referred to the merits.
Defendant, under benefit of its exceptions, answered.
After pleading the general issue, it admitted and averred that for nearly ten years past it had been storing, for hire, in warehouses belonging to the Morgan’s Louisiana and Texas Railroad and Steamship Company, a corporation created by special act of the Legislature of this State, being Act No. 37 of the Acts of 1877, by arrangement with the owner thereof, goods and merchandize, transported or to be transported over the line of railroad and steamships of said company, consisting almost entirely of sugar and rice, and during said period had been issuing warehouse receipts, such as were authorized by Act No. 156 of the General Assembly of this State, with the condition and requirements of which this defendant had fully complied; and it further averred that said business was not'ultra vires or contrary to the policy of the State or the interests of the public; that it afforded much needed facilities to the patrons of said railroad, and was a necessary and proper incident to the business of said railroad in which it was engaged.
That while it believed its action in the premises had been entirely inira vires, nevertheless, in view of the contention made by the State in this suit, it had concluded to withdraw from said business referred to by the State, as that of a public warehouseman, and to surrender and return to the said owner the possession of said warehouse; and it had done so, and had transferred its unfinished business to the said Morgan’s Louisiana and Texas Railroad and Steamship Company.
No notice seems to have been taken of the averment in the answer: that defendant had withdrawn from the business of warehouseman, and had surrendered and returned to Morgan’s Louisiana and Texas Railroad and Steamship Company (the owner thereof) the possession of the warehouse, and had transferred its unfinished business to said corporation, but the case went to trial, resulting in a judgment in favor of the defendant, dismissing plaintiff’s demand with costs.
The State apx>ealed.
Plaintiff’s prayer was based upon allegations that the Southern Pacific Company, a foreign corporation, chartered and organized under the laws of the State of Kentucky, carrying on business and maintain *1825 ing a public office in this State, and in the City of New Orleans, had usurped, intruded into, and was unlawfully holding and exercising the public franchise of carrying on and transacting the business of a public warehouseman in the City of New Orleans, and State of Louisiana.
That the Southern Pacific Company was then, and had been for more than one year past, daily, and continuously, soliciting and receiving property for storage in its warehouses, for hire and reward, in the Oity of New Orleans, issuing over the signatures of its authorized agents, public warehouse receipts, therefor to the order of the different persons entitled thereto, which said receipts purport to be issued by defendant as a public warehouseman, bearing the date of the day of their issue, and stating upon their face the name of the warehouse and its location, the description, quantity, number and marks of the property stored, and the date on which it was originally received by said defendant in its warehouse, and that it is deliverable upon the return of the receipt properly endorsed by the person to whose order it was issued, and on payment of all charges for storage, said receipts being numbered consecutively, in order of their issue.
That it had been receiving goods, wares, merchandize and agricultural products in the warehouses leased and kept by it in the Oity of New Orleans, from day to day, during the past year, charging storage therefor and delivering th%property received, and, in general, conducting and carrying on the business known as a public warehouseman, aforesaid.
That said receipts issued by it purported to be negotiable and transferable by endorsement in blank, or by special endorsement, and delivery in the same manner and to the same extent as bills of exchange and promissory notes now are.
That is was then, and had been for the past year, continuously, from day to day, carrying on a very large and extensive business as a public warehouseman in the Oity of New Orleans.
It averred that said acts and doings of said defendant, above recited, were illegal and contrary to petitioner’s public policy. That said acts and doings of defendant, above recited, were not authorized by its charter, and the same were wholly ultra vires. The defendant could not carry on, conduct or transact any business in this State, not specially authorized by its charter, and the business of public warehouseman *1826 whs not and could not be carried on by defendant under its charter.
That said business, so conducted by defendant, was contrary to and violative of the Constitution of this State, which provides that “no corporation shall engage in any business other than that expressed in its charter or incidental thereto,” and said business of public warehouseman was neither expressly authorized by the defendant's charter, nor in any manner incidental thereto.
That said public franchise and business of public warehouseman so usurped and carried on by defendant was very profitable, and the acts and doings of said defendant were highly injurious and detrimental to petitioner’s interest and the interest of her citizens, licensed and authorized by her laws to carry on business as public warehouseman in the City of New Orleans, and State of Louisiana.
That, the premises considered, petitioner was entitled to have defendant adjudged guilty of usurping and intruding into and unlawfully holding and exercising the franchise and privilege, and perpetually enjoined from carrying on, transacting and conducting said business in the City of New Orleans and State of Louisiana.
Opinion.
Had the defendant company been organized in Louisiana, under a charter precisely similar to that under which it !was incorporated in the State of Kentucky, it would not have been entitled to carry on here, as a corporation, the business of warehousing as a substantive independent business. The charter of the company did not entitle it to pursue such business in Kentucky.
It was held in Oregon Railway Company vs. Oregonian Railway Company, 130 U. S. Reports, page 1, that a corporation can exercise, in another State, no power or authority which is not granted to it by the charter under which it exists, or by some other legislative act. (See also Canada Southern Railroad Company vs. Gebhard, 109 U. S., page 537; Murfree on Foreign Corporations, Section 9, pages 10 and 11).
For a double reason, therefore, is the defendant without warrant in carrying on such business here.
The evidence shows that the defendant company is operating, in Louisiana, a connected line of railroad under leases obtained from several railroad corporations. We do not think its right to do this is an issue in this case under the pleadings. Assuming it to be properly *1827 operating sneli road, the question is submitted to us whether it has the right to receive and store goods, produce and merchandize in warehouses, for hire, in connection with its business of railroading.
Article 265, of the Constitution of 1898, declares that “no corporation shall engage in any business other than that expressly authorized in its charter or incidental thereto.”
We are of the opinion that the defendant company is not authorized to receive, as being for purposes incidental to its business as a railroad or common carrier, a license under Act No. 156 of 1886. The license granted thereunder contemplates a permanence of the storage of articles received, which is inconsistent with the legitimate ¡and regular business of a railroad corporation. (Franklin National Bank vs. Whitehead, 149 Indiana, 560; 49 N. E. Reporter, 592).
The rights, duties and obligations of a common carrier and warehouseman are separate and distinct. Railroad corporations are common carriers, while warehousemen are depositaries for hire or reward.
We are of the opinion that the defendant company is not authorized to receive for storage, for hire, in warehouses, goods or produce which have not been received by it, under and from shipments by its road, or for shipment upon its road. Wo think it authorized to receive them for storage in warehouses, under and from shipments upon its road, and for shipment by its road, to the extent that such storage is in fulfilment of its obligations, as a common carrier, and not other wise, and no longer.
We do not consider that storage of such goods and merchandize, by defendant in warehouses, for hire, is incidental to its business as a. railroad corporation and common carrier, when the storage is made under either an express or implied special or general agreement with shippers or consignees, either before or at the time of shipment, or on receipt of goods, that they should be received and held for storage, for hire, either for a fixed time or at the will of the shippers or consignees..
We have already staled that permanence in the storage is, in our opinion, inconsistent with the idea of its being incidental to the operation of a railroad corporation, or necessary for its business as a common carrier.
The fact that by availing itself of its control of switches, tracks and superior terminal facilities, defendant may offer special advantages and accommodations to shippers in storing their goods, and thereby obtain *1828 increased revenues, as a corporation, is not at all determinative of the question whether the storage is incidental to its business as a railroad corporation, or the revenues received therefrom accrue to it as a common carrier.
If such advantages and facilities enure to the particular shippers or consignees who, by agreement express or implied, can obtain the benefit of them instead of to sucessive shippers or consignees, as they would have occasion to and be entitled to utilize them, it pan scarcely be claimed that they were designed for general convenience of shippers arid consignees over and by the railroad. We think that the storage of goods, by a railroad, in its warehouses, as a matter incidental to its business as such, contemplates and looks to a rotation of storage as immediate and prompt as the railroad corporation can make it.
It should have its way open for that purpose at all times, freed from all express or implied agreements or understandings, with particular shippers or consignees. If storage for hire be made by the railroad corporation, it should only be under an enforced storage resulting from the fact that shippers have failed to receive promptly, as they should do, the shipments carried over the roa'd, and from this enforced storage the corporation itself should rid itself as quickly as possible. Inasmuch as the continuity of the relations between the parties have, by novation, been broken and changed from those of shipper or consignee and common carrier, to those of bailors and bailees, and the railroad company receives for the storage a consideration other than the regular freight rate, the storage takes on a different form and character from that which it would otherwise have, and becomes substantive, independent, and not an incidental business. To be incidental business, the storage must be preliminary, either to immediate transportation or immediate removal. (Hutchinson on Carriers, Sections 62, 63, 88, 89, 97, 351, 352, 356, 369, 378; Chicago and Rhode Island Railroad vs. Warren, 16 Illinois, 502).
Appellee has called our attention to several decisions as to what may be designated as business incidental to that of a railroad corporation, among others to that of Jacksonville Railway Company vs. Hooper, 160 U. S., 514, in which it is said that the Supreme Court of the United States referred to the keeping of a hotel by a railroad corporation as business incidental to that of operating a railroad. The action referred to was not one between the State and the corporation seeking to *1829 restrain the operations of the corporation to operations within its legitimate business, but. one in which the railroad corporation was sought to be made liable by the other party to a contract of the lease of a hotel, which the corporation had'made, and against which claim it was defending itself upon the ground that the contract was ultra vires. Having entered into this contract and received benefit from it, it was attempting to avoid pecuniary liability for that for which it had received full consideration. The question, when presented to a court under such conditions, and between such parties, is very different from what it is when urged in a direct action brought by the State. In the ease cited the court, alluding to the operation of a hotel or eating house by a railroad company, referred to this as being done “not for the purpose of making money out of such business,- but to furnish reasonable and necessary accommodations to its passengers and employees,” and the situation under which this was being done was assumed to be “the maintaining of cheap hotels or eating, houses at stated points on the railroad through a wilderness, or at the end of a railroad on a barren, unsettled beach.”
While it might be very consistently said that a railway company could, incidentally and in aid of its business as a common carrier, establish restaurants upon its cars, or eating houses on its line of way, for the convenience of passengers, it could hardly be claimed that it could establish one or two large hotels in the City of New Orleans, off its line of way, where guests are received, there to remain as long as they think proper, at hotel prices, even though by a system of omnibuses and transfer wagons, it might be attempted to keep unbroken the link as passenger and carrier, between the corporation and the guests at the hotel.
We do not think we are called on here to attempt to define the particular time and circumstances under which the relations between shippers and consignees of goods by a railroad, and the railroad companies, as a common carrier, shift to those of bailors and bailees (State ex rel. Violet vs. Johnson, 46th Ann., 85) ; it suffices to recognize the fact that thefe may be such a shifting, and, when it occurs, the storage of goods in the warehouses of the corporation, for any length of time, becomes a distinct substantive business, and can not be carried on as being incidental to its franchise as a railroad corporation. That the defendant corporation has carried on such substantive business in the past, is, we *1830 think, shown by the evidence. We think the State has the undoubted right to prevent its continuance.
For the reasons assigned, it is hereby ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the defendant corporation be and is hereby enjoined and restrained from 'taking out a license as a public warehouseman, under Act No. IS 6 of 1886, and from carrying on business as a public warehouseman for hire.
It is further ordered, adjudged and decreed that the defendant company be and it is hereby enjoined and restrained from carrying on, or pursuing, the business of warehousing for hire, as a substantive business, and that it be restricted in its storage of goods in warehouses, to storage by it, in fulfillment alone of its obligations as a common carrier.
It is further ordered that defendant pay costs in both courts.
Breaux, J, and Blanchard, J.,
while giving assent to the principle on which the decision of the majority rests, withhold concurrence on the ground that it should distinctly affirm, instead of leaving it to inference, that nothing therein contained is intended to deny to defendant corporation the right to charge a reasonable compensation or demurrage for freight received by it in its capacity as common carrier for transportation over its lines, and which can not be immediately shipped to its destination, or for freight received by transportation over its lines, which can not be immediately delivered to the consignee.
This right undoubtedly exists as incidental to the business of common carrier, though freight can not be so held and charged for beyond a reasonable time.