MOSES WILLIAMS & others, trustees, *vs.* LAURENCE H. H. JOHNSON, trustee, & others.

Suffolk. January 17, 1911. — May 16, 1911. ·

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Corporation, Ultra vires. Railroad.*

When a railroad corporation finds itself the owner of a large tract of valuable land in the heart of a city, which no longer is available for railroad purposes, it is the duty of such corporation to dispose of the land and turn it into money, and the corporation lawfully may exercise such powers as are incidental to its ownership and right to sell, but nothing more is permissible than what is fairly incidental to a disposition of the property for its fair market value within a reasonable time.

A railroad corporation, subject to the laws of this Commonwealth and operating a railroad therein, which was the owner of a large tract of land in the heart of a city of the estimated value of $5,000,000 that no longer was available for railroad purposes, made a deed of conveyance of such tract of land to certain trustees accompanied by a declaration of trust, by which the property was put into the hands of the trustees as managing agents, who were appointed irrevocably, to conduct a business relating to the improvement, sale and management of real estate for a term that might last nearly a century, with practically the powers of an absolute owner not only over the property conveyed but for the acquisition and management of other real estate in the vicinity and of shares in corporations relating to the use, management and improvement of real estate. The scheme set forth in the declaration of trust contemplated the borrowing of money

to create an indebtedness not exceeding $4,000,000 at any one time. The railroad corporation was to receive from the trustees in payment for the conveyance transferable certificates representing fifty-two thousand shares of the beneficial interest of the property held in trust of the par value of $100 each. The trustees were authorized to issue not exceeding forty thousand additional shares of the same nominal value in exchange for convertible notes or bonds that the trustees might issue to obtain money to be used in conducting the enterprise, and the declaration of trust contemplated an unlimited extension and enlargement of the enterprise, in the discretion of the trustees, by the issuing of additional shares to persons who should subscribe for them. *Held*, that the deed of the railroad corporation was beyond the power of the corporation to make and that the trustees took no valid title under it.

KNOWLTON, C. J.    This is an appeal from a decree of the Land Court granting a petition for the registration of the title to a tract of land in Boston, a part of which was formerly occupied as the station of the Boston and Providence Railroad Company, at Park Square. The diversion and extension of the railroad and the erection of the terminal passenger station in Boston under the St. 1896, c. 516, rendered the property no longer available for railroad purposes, and it was conveyed by this corporation to the New York, New Haven, and Hartford Railroad Company * in consideration of improvements made by the grantee upon the property of the grantor, in connection with the location and erection of the new station. The validity of this conveyance was confirmed in *Little* v. *Old Colony Railroad*, 202 Mass. 277. The petitioners claim title under a deed from the New York, New Haven, and Hartford Railroad Company, bearing date September 15, 1909. The respondents, who are stockholders in the last mentioned corporation, deny the validity of the deed, on the ground that it was *ultra vires* of the corporation and that the directors had no authority to make it.

The deed runs to the petitioners as trustees under a declaration of trust. The consideration expressed in it is $1 and other valuable considerations. The conveyance is "subject to and upon the terms, provisions and trusts mentioned and set forth in the aforesaid declaration of trust." This declaration is of a peculiar kind. It provides that the trustees shall forthwith issue to the grantor certificates, in a form prescribed, for fifty-

* A railroad corporation, subject to the laws of this Commonwealth and operating a railroad therein. See *Attorney General* v. *New York, New Haven, & Hartford Railroad*, 198 Mass. 413.

two thousand shares, of a nominal par value of $100 each, in payment for this real estate. The entire interest of the *cestuis que trust*, or shareholders in the property, was to be represented, immediately after the conveyance, by these shares. The trustees were authorized to issue not exceeding forty thousand additional shares of the same nominal par value, in exchange for convertible notes or bonds that the trustees may issue to obtain money to be used in conducting the enterprise. The shares are transferable on the books of the trustees. The shareholders are not to have any legal title to the trust property itself, real or personal, and especially they are not to have a right to call for any partition. It is declared that they shall have no equitable estate in the lands and appurtenances constituting the trust property, but their interest shall consist only of an interest in the money to arise from the sale or other disposition thereof by the trustees, and, previously to such sale, in all the rights mentioned in the declaration, which are rights " of division of proceeds and profits and the other rights and matters concerning the trust property."

The death of a shareholder is not to determine the trust, nor entitle his legal representatives to an accounting, but his rights are to pass to his executors, administrators or assigns, upon the surrender of the certificate of the shares. The trustees may from time to time invite and receive subscriptions to additional shares, for the purpose of increasing the capital of the trust, giving preference, upon such terms and conditions as they shall deem best, to existing shareholders, and to the holders of convertible notes or bonds. The trustees have no power to bind the shareholders personally for any debt, nor are the trustees to be personally liable for claims or debts against the trust, but all persons extending credit to the trustees are to look only to the property of the trust for their payment. The trustees have no pecuniary interest in the property of the trust, or in the business carried on under the trust, except for the payment of prescribed commissions upon receipts and expenditures, as compensation for their services.

The trustees are to have absolute control over and disposal of all real estate and other property held under the trust, including the power to improve it by building thereon or otherwise ; to sell, for cash or credit, at public or private sale, any part of

the property; " to lease or hire for improvement or otherwise, for a term beyond the possible termination of this trust, or for any less term, to let, to exchange, to release and to partition." They have power to borrow money to carry out the purposes of the trust, to issue notes or bonds, and to secure the repayment of them by a pledge, mortgage or hypothecation of the property of the trust, or any part of it. The only limitation upon the power to borrow is that the total indebtedness at any one time shall not exceed $4,000,000. Notes or bonds issued for such indebtedness may be made convertible into shares of the trust.

The trustees may acquire, by purchase or otherwise, any real estate or any interest therein in the vicinity of that conveyed by the deed in question, " and any notes, bonds, shares or other securities of any corporation, association or real estate trust, organized or adapted for the purpose of acquiring, holding, managing or improving real estate, or for the purpose of conducting a lighting, heating, power or other business directly related to the management of real estate, if in their judgment such acquisition will in any manner tend to facilitate the laying out, development, management or improvement of the real estate " conveyed to them by the deed in question. They may lay out and construct or discontinue streets or ways, upon any property at any time held by them. They may dedicate to public use, or convey to the city of Boston, with or without compensation, any part of the property, with a view to the enhancement of the value of the remaining property. For a like purpose they may contribute money or other property to the cost of any public or quasi public undertaking. In all these matters the judgment and determination of the trustees is to be final and conclusive.

They may from time to time determine what of their receipts and expenditures shall be treated as capital and what as income, and their determination shall be final. They may divide net income among the shareholders, under certain limitations, and may set aside a part of the net income as a reserve or contingent fund. Their determination of what is net income is to be conclusive. The trust is to continue until the expiration of twenty years from the death of the last survivor of nine persons named, some of whom, presumably, are quite young, unless three

fourths in value of the shareholders shall appoint an earlier time for its termination, not earlier than the second day of July, in the year 1919, by an instrument in writing duly signed and acknowledged. After the termination of the trust by its own limitation, or by such an appointment of three fourths of the shareholders, the proceeds are to be divided among the shareholders. The trustees, when vacancies occur in their number, may appoint their own successors.

By this conveyance and the accompanying declaration of trust, the New York, New Haven, and Hartford Railroad Company set on foot a scheme to put property, of an estimated value of more than $5,000,000, into the hands of trustees as managing agents, who were appointed irrevocably, to conduct a business for a term that might last nearly a century, with practically all the powers of an absolute owner, not only over the property conveyed, but for the acquisition of other real estate in the neighborhood, and of shares in corporations which have relation to the use, management and improvement of real estate. The scheme contemplates the borrowing of money to create an indebtedness not exceeding $4,000,000 at any one time. It contemplates an unlimited extension and enlargement of the enterprise, in the discretion of the trustees, by the issue of additional shares to persons who subscribe for them. It contemplates a real estate business, if not a speculation, that may continue a long time and become gigantic, of which the railroad corporation is now the sole owner. It needs no argument to show that, ordinarily, the proprietorship of such a business, by a railroad company as a beneficiary, is not within its corporate powers.

As was said in *Davis* v. *Old Colony Railroad*, 131 Mass. 258, 259, " A corporation has power to do such business only as it is authorized by its act of incorporation to do, and no other. It is not held out by the government, nor by the stockholders, as authorized to make contracts which are beyond the purposes and scope of its charter. It is not vested with all the capacities of a natural person, or of an ordinary partnership, but with such only as its charter confers." In *Waldo* v. *Chicago, St. Paul & Fond du Lac Railroad*, 14 Wis. 575, 581, we find this language: " When a corporation, created for the purpose of building and

operating a railroad, goes into the business of banking, or manufacturing and selling goods, or dealing and speculating in real estate, because its corporators or board of directors think such adventures may be profitable, or if a bank should go to building and operating a railroad for like reason, it is easy to see that in each instance the corporation is attempting to transact business which, under its organic act, it has no right or power to do. And if the corporation might embark in a separate and distinct business, not contemplated by its charter, merely because it was supposed it would be profitable and increase its means and resources, there would be no safety to the public in granting any special charters, and none to individuals who might invest in the stock of the company." The following are a few among the many other cases that apply the same doctrine: *Attorney General* v. *Great Northern Railway*, 1 Dr. & Sm. 154; *Case* v. *Kelly*, 133 U. S. 21; *Pacific Railroad* v. *Seely*, 45 Mo. 212; *State* v. *Southern Pacific Co.* 52 La. Ann. 1822; *Chicago* v. *Cameron*, 120 Ill. 447; *People* v. *Pullman's Palace Car Co.* 175 Ill. 125; *Slater Woolen Co.* v. *Lamb*, 143 Mass. 420.

If the railroad company had taken its money and purchased land, and had applied it to a use like that contemplated by this scheme, no one would contend that it was acting within the law. We are left with only the question whether its ownership of this real estate justifies its creation of such an enterprise.

Its ownership of the land, which came to it legitimately, left it with the property on hand, to be sold or disposed of, so that its proceeds could be properly used for the purposes for which the corporation was created. It did not give it the right to hold the land permanently, or for an unreasonably long time, as an investment for the production of income; much less did it give it the right to carry on, for a long term of years, the business of speculating in land, or developing this and other land in the vicinity, and changing its general character, for the purpose of gain. If the corporation could not do this directly, it could not do it indirectly through the appointment of trustees or agents who should continue the business for its benefit. *Attorney General* v. *New York, New Haven, & Hartford Railroad*, 198 Mass. 413.

The objection to such a venture on the part of a corporation is twofold. On the part of the State it is that the corporation is

usurping powers which were never conferred upon it, and is engaging in a business which the Legislature has not authorized it to do, and to which there may be grave objections on grounds of public policy. The trustees are managing for this corporation, as the beneficiary, a large amount of valuable real estate in the heart of Boston, and are authorized, in the interest of the beneficiary, to make donations of land or other property for public purposes, or to convey it to the city of Boston with or without compensation, to lay out and construct or to discontinue streets, and become the owners of corporations engaged in other kinds of business relating to real estate, even in remote parts of the city. There may be grave reasons connected with the public interest why such powers should not be exercised in a city, and, incidentally, an influence possibly be exerted in behalf of a great railroad corporation. At all events, the Legislature has never seen fit to authorize their exercise. Corporations for the holding of real estate for purposes of profit have always been deemed objectionable, and the general laws of this Commonwealth do not permit the organization of such corporations.

The other objection is from the side of the stockholder in the corporation. He invests his money by subscribing for the shares of stock, with a knowledge of the purpose for which the corporation is organized, and with a view to the probable gain, and a thought of the possible loss, that may result from the transaction of the business of the corporation. He does not invest in any other kind of enterprise than that which is within the authority conferred upon the corporation. His protection requires that the company be confined strictly to the business and functions for which it was organized. It would leave him without compass or rudder in making his investment, if the managing officers, or a majority of the stockholders, could use the corporate property in a business foreign to that for which the company was established·

In turning this real estate into money, the railroad company should not be held too strictly to sales to be made at once and without expenditure for changes and improvements that would increase its marketable qualities. A reasonable latitude in that respect is· fairly incidental to ownership with a right to sell. *Dupee* v. *Boston Water Power Co.* 114 Mass. 37. But nothing more than what is fairly incidental to a reasonable disposition of

the property for its fair market value, within a reasonable time, is permissible.

The only debatable question in this case is whether such a scheme as has been devised is incidental to the right to sell, and · reasonably necessary to enable the corporation to obtain the fair market value of the property. We are of opinion that it is not.

The reasons relied on by the petitioners for adopting the scheme, as given in the statement of agreed facts, are that " earnest efforts during several years were made, without success, to sell the same and convert it into cash, but the risks and uncertainties attending the development and use of so large a tract of land, without streets or other facilities for its development, were such that no purchaser was in fact found, and no purchaser seemed likely to be found, willing and able to purchase said property, except at a price so low as to indemnify him against all such risks and uncertainties and much below the estimated real value of said land." This is, in substance, that the directors have not been able to sell the land for its estimated value, and that there are risks and uncertainties attending the development and use of the land, which a purchaser would take into account in determining what price he would pay for it. The directors decided to put these risks and uncertainties upon the stockholders of the corporation, by providing for a business of developing and using this property for many years, in the belief, doubtless, that the business would be more profitable than a sale to others who would assume the risks of such a business. This is not very different from taking $5,000,000 in money of the corporation, if that amount happened to be on hand, and if land could be bought for its fair market value, and investing the money in such an enterprise, in the expectation that the assumption of these risks and uncertainties, in buying at a price diminished on account of them, would open a large field for profit in the business of developing and using the property.

The conveyance to the trustees merely changed the form of the property. It did not bring a dollar to the treasury of the corporation. If the trust were sustained, it might or might not be possible, at some time, to sell shares at their estimated value instead of selling portions of the land. But, presumably, there will be no satisfactory market for any of these shares, unless

it is demonstrated, after a considerable time, that the business is likely to prove profitable.

In addition to the general objections already stated to such a venture on the part of a railroad corporation, there are special objections. If stock is purchased by the trustees in other corporations, this corporation will become indirectly a holder of the stock of these other companies, in direct violation of St. 1906, c. 463, Part II. § 57, which expressly forbids the directly or indirectly subscribing for, taking or holding, by a railroad corporation of the stock or bonds of any other corporation. *Attorney General* v. *New York, New Haven, & Hartford Railroad,* 198 Mass. 413. In *Williams* v. *Boston, ante,* 497, it was decided that the certificate holders in such a trust are partners within the meaning of that word in St. 1909, c. 490, Part I. § 27.

Moreover, if other stock is issued by the trustees, and other parties are brought into the enterprise, and other lands are bought, the railroad corporation will be in a community of interest in the profits and losses, and in all the activities of the business, with other owners. It will be virtually, if not technically, in partnership with them. It is familiar law that a corporation cannot enter into a partnership. *Whittenton Mills* v. *Upton,* 10 Gray, 582. *Bishop* v. *American Preservers' Co.* 157 Ill. 284. *Burke* v. *Concord Railroad,* 61 N. H. 160. *Mallory* v. *Hanaur Oil Works,* 86 Tenn. 598. *Sabine Tram Co.* v. *Bancroft & Sons,* 16 Tex. Civ. App. 170, 174. *People* v. *North River Sugar Refining Co.* 121 N. Y. 582. Most of the reasons for this rule are as applicable to the present case as to an ordinary partnership. They are strongly stated in the first and last of the cases just cited. Through the trustees, who represent the interests of new shareholders as well as those of the creator of the trust, the rights and interests of the railroad corporation are controlled in part for those who are not members of it or peculiarly interested in it.

In the decision in *Kelly* v. *Biddle,* 180 Mass. 147, cited by the petitioners, it was assumed that the arrangement, only for a temporary purpose, might have been *ultra vires* of the corporation.

It is the duty of a railroad corporation holding real estate under such circumstances as exist in this case, to dispose of it and turn it into money with all reasonable despatch, and in view of such circumstances it may take all action necessary to realize

from it, so far as possible, its 'fair value. We do not attempt in the present case to prescribe the precise limits of the authority of a corporation for the accomplishment of this end. These must depend upon existing conditions. Some liberality should be exercised in allowing a choice of methods where the amount involved is large and the conditions complicated.

We are of opinion that the deed of the New York, New Haven, and Hartford Railroad Company to the petitioners was beyond the power of the corporation or the directors to make, and that the petitioners took no valid title under it.

*Petition dismissed.*

The case was argued at the bar in January, 1911, before *Knowlton*, C. J., *Morton*, *Loring*, *Braley*, & *Rugg*, JJ., and afterwards was submitted on briefs to all the justices.

*H. Wheeler*, (*C. S. Rackemann* with him,) for the respondents.
*B. W. Warren*, (*C. R. Lamson* with him,) for the petitioners.